## In re PIPER AIRCRAFT CORPORATION, Debtor.

### Bankruptcy No. 91–31884–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida,
Palm Beach Division.

Aug. 31, 1994.

See also, 169 B.R. 766.

Mindy A. Mora, Stroock & Stroock & La-van, Miami, FL, for Piper Aircraft Corp.

Howard J. Berlin, Kluger, Peretz, Kaplan & Berlin, Miami, FL, for Official Unsecured Creditors' Committee.

Leslie G. Cloyd, Ackerman, Bakst & Cloyd, P.A., West Palm Beach, FL, for Indian River County Tax Collector's Office.

Keith Merrill, Merrill & Pollack, Coral Gables, FL, for Equivest Ltd. Partnership.

William D. Soman, pro se.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Piper Aircraft Corporation ("Piper" or "Debtor") seeks relief to reduce its unpaid real property and personal property tax obligations for the years 1989 through 1993. The Debtor's right to seek such relief under § 505 of the Bankruptcy Code is challenged by the tax collector and by the holder of a tax certificate.

The Debtor has filed a Motion for Determination of Amount of Unpaid Real Property Taxes and Tangible Personal Property Taxes

and Non–Ad Valorem Assessments against Property in Indian River County, Florida (the "505 Motion"). The issues before the Court are framed by Indian River County's Motion to Dismiss and Response to the Debtor's 505 Motion and by the Motion of Equivest Limited Partnership to Strike the Debtor's 505 Motion.

The Court conducted a hearing on July 21, 1994. After consideration of the pleadings and the arguments presented at the hearing, the Court concludes that the Debtor may seek relief under § 505 notwithstanding its failure to challenge the assessments under applicable state law and notwithstanding the sale of the underlying tax obligations by the county to third parties.

### FACTS

Piper has been designing, manufacturing, and distributing general aviation aircraft and associated spare parts since 1937. Currently, Piper is attempting to reorganize under Chapter 11 of the Bankruptcy Code.[1]

The Debtor's manufacturing facilities include approximately eighty-four (84) acres of real property in Vero Beach, Florida, located on the south side of the Vero Beach Municipal Airport. In 1989, 1990, 1991, 1992, and 1993, the tax assessor for Indian River County assessed the value of this real property (including improvements located thereon) and levied taxes in the following amounts:

| Year | Assessed Value | Amount Due[2] |
|------|----------------|------------|
| 1989 | $17,119,910 | $578,036.31 |
| 1990 | $14,129,280 | $472,668.18 |
| 1991 | $14,171,610 | $324,293.86 |
| 1992 | $14,171,630 | $328,713.26 |
| 1993 | $14,070,697 | Unknown |

In addition, the Debtor owns machinery, equipment, and various other tangible personal property. Pursuant to various Notices of Ad Valorem and Non–Ad Valorem Assessments for tax years 1990, 1991, 1992, and 1993, the Tax Assessor assessed the value of the machinery, equipment, and other tangi-

**1.** Piper filed a voluntary petition for relief under Chapter 11 on July 1, 1991.

**2.** The amount listed indicates the amount that would be payable if the tax were paid by April 1 of the year following the year in which the property was assessed.

ble personal property and levied taxes in the following amounts:

| Year | Assessed Value | Amount Due |
|------|----------------|------------|
| 1990 | $11,585,625 | $324,813.78 |
| 1991 | $11,318,385 | $282,863.19 |
| 1992 | $ 7,706,390 | $173,461.87 |
| 1993 | $ 7,706,390 | $153,413.98 |

The Debtor did not file an action contesting the tax assessments on either its real or personal property within sixty (60) days of the date of the assessments, as required under state law. Fl.Stat. § 194.171(2).[3]

On February 18, 1994, Piper filed its 505 Motion seeking a redetermination of the amount of the unpaid taxes listed above. In the 505 Motion, Piper claimed that the assessed value of the real and personal property exceeded the true value of the property. The 505 Motion requests that this Court determine the assessable value of the property so that Piper is taxed in an amount which reflects the true value of the real and personal property. Piper also seeks a reduction in the interest rate to be applied against its unpaid taxes.

The Court received a motion to dismiss and response in opposition to the 505 Motion from the Indian River County tax collector (the "Tax Collector") and a motion to strike the 505 Motion from Equivest Limited Partnership ("Equivest"), a partnership which purchased a tax sale certificate evidencing Piper's unpaid real property taxes for the year 1989.

### ISSUES PRESENTED

The responses raised two issues: (i) is a debtor precluded from seeking relief under Section 505 of the Bankruptcy Code where the debtor failed to challenge the assessment under applicable state law procedures; and (ii) is a debtor precluded from seeking relief under Section 505 of the Bankruptcy Code where the underlying tax obligation has been sold by the county to a third party in the form of a tax certificate? [4]

**3.** This provision was included in the Florida Statutes during all years relevant to this proceeding.

**4.** The responses filed by the Tax Collector and Equivest also raised the issues of whether this Court should abstain from exercising its jurisdiction to determine this matter and whether the State of Florida Department Of Revenue, the tax

## DISCUSSION

### I. THE DEBTOR MAY SEEK RE-LIEF UNDER SECTION 505 OF THE BANKRUPTCY CODE EVEN THOUGH THE DEBTOR FAILED TO CHALLENGE THE ASSESS-MENT UNDER APPLICABLE STATE LAW PROCEDURES.

■ Section 194.171(2) of the Florida Statutes requires all actions contesting a tax assessment to be brought within sixty (60) days from the date the tax assessment is certified for collection. Failure to do so deprives the Florida circuit court of jurisdiction to hear such matters. Fla.Stat. § 194.171(6).

The Tax Collector argues that the Debtor's failure to timely contest the tax assessments at issue in this case deprives the bankruptcy court, a court of federal jurisdiction, of jurisdiction over this matter. Specifically, the Tax Collector urges that the Debtor is precluded, by its inaction, from seeking relief under Section 505 of the Bankruptcy Code.

The Tax Collector relies upon *In re Qual Krom South, Inc.*, 119 B.R. 327 (Bankr. S.D.Fla.1990). In *Qual Krom*, a debtor's claim for a federal income tax refund under § 505 of the Bankruptcy Code was denied because the debtor failed to assert its right to a refund within the time specified by applicable non-bankruptcy law. The result reached in *Qual Krom* was expressly rejected in *In re Ledgemere Land Corp.*, 135 B.R. 193, 198 (Bankr.D.Mass.1991), *In re 499 W. Warren Street Associates*, 143 B.R. 326, 328 (Bankr.N.D.N.Y.1992), and *In re AWB Associates*, 144 B.R. 270, 278 (Bankr.E.D.Pa. 1992). This Court likewise disagrees with the reasoning and holding in the *Qual Krom* decision.

The plain language of § 505 grants bankruptcy courts authority to "determine the amount or legality of *any* tax" as long as that tax has not been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement" of the bankruptcy case. 11 U.S.C. 505(a) (emphasis supplied).

assessor, and the other tax certificate holders should be made parties to this proceeding. This

■ A bankruptcy court has authority to determine the amount of a debtor's tax liability, notwithstanding the debtor's failure to comply with state law procedures. *See, e.g., In re AWB Associates*, 144 B.R. at 277; *In re 499 W. Warren Street*, 143 B.R. at 329; *In re Ledgemere*, 135 B.R. at 196. Section 505 was enacted to protect creditors "from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which a debtor, due to its ailing condition, failed to contest." *In re AWB Associates*, 144 B.R. at 277, *citing In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y.1990).

■ As noted by Judge Queenan in *Ledgemere Land Corp.*,

> The broad grant of jurisdiction contained in § 505 makes no reference to time periods imposed by state law.... [A] debtor as representative of the bankruptcy estate is allowed to contest tax debts in the bankruptcy court even though his prior inaction would bar him from contesting them elsewhere. This is permitted on the ground that taxes with their priority pose a special problem for creditors, and creditors should not be prejudiced by a debtor's inaction.

*In re Ledgemere Land Corp.*, 135 B.R. at 196–97.

Thus, Piper may challenge the assessed value of the real and personal property which is the subject of the 505 Motion and may seek a determination of tax liability for each of the years in question under Section 505 of the Bankruptcy Code notwithstanding its failure to timely challenge the assessments under Florida law.

### II. THE DEBTOR MAY SEEK RE-LIEF UNDER SECTION 505 OF THE BANKRUPTCY CODE EVEN IF THE UNDERLYING TAX OB-LIGATION HAS BEEN SOLD BY THE COUNTY TO A THIRD PAR-TY.

■ Chief Judge Cristol of this Court has ruled that the bankruptcy court has the power to modify the interest rate to be paid under a Chapter 11 plan to the owners of tax

opinion addresses both of these issues; neither warrants extensive analysis.

certificates sold by Florida counties. *In re General Development Corp.*, 147 B.R. 610, 612 (Bankr.S.D.Fla.1992).[5] In *General Development*, the court discussed the speculative nature of a tax certificate, and recognized that "[a] buyer of Tax Certificates who believes that they are the quality of government notes, bills or bonds is misinformed." *Id.* at 613. The analysis of the nature of tax certificates in *General Development* indicates that despite state law, the rights of certificate holders in respect of taxes owed by debtors are subject to the authority of the bankruptcy court.

The sale of the tax certificates in *General Development* occurred after the debtor in that case had filed its bankruptcy petition. Equivest and the Tax Collector urge that this distinction renders *General Development* inapplicable to this case. They argue that the purchasers of tax certificates in *General Development* were "on notice" of the debtor's bankruptcy and therefore bought the certificates subject to the jurisdiction of the bankruptcy court. The certificates in this case were purchased prior to the filing of the bankruptcy case. As such, the tax certificate holders argue that their rights should not be subject to the jurisdiction of the bankruptcy court. The Court disagrees.

■ Bankruptcy courts have had the power to re-examine or alter the amount of a tax obligation under Section 505 of the Code since 1966.[6] Section 505 has never included a carve-out, either legal or equitable, for tax liabilities which have been purchased by third parties. Moreover, the Supreme Court

of Florida has ruled that tax certificates merely evidence unpaid taxes and do not change the basic nature of the taxpayer's obligation. *Smith v. Arcadia*, 185 So.2d 762, 767 (Fla.1966).[7] There is no language in Section 505 nor any case law which would limit a debtor's right to challenge the amount of a tax liability because of the sale of a tax certificate to a third party.

■ Equivest and the Tax Collector also argue that affecting the principal amount of a tax liability which has been sold by a county to a third party will alter the risk to certificate holders and thus impact on a county's future ability to sell tax certificates. These policy arguments do not overcome the federal policy embodied in Section 505 which permits a debtor to seek a reduction in its taxes, for the benefit of the estate and its creditors.

■ In sum, a debtor may seek relief under Section 505 of the Bankruptcy Code notwithstanding the sale of the underlying tax obligation by a county to a third party. Moreover, for the policy reasons stated above, the court declines to abstain from exercising its jurisdiction to hear this matter.[8]

■ Since the ultimate resolution of this issue may affect the rights of holders of tax certificates, the Indian River County tax assessor, and the State of Florida Department of Revenue, each such party shall be made parties to this contested matter by the Debtor's service of a copy of its motion and all other relevant papers.[9]

---

5. *In re General Development* was decided under Section 1129 of the Bankruptcy Code, not under Section 505.

6. Section 505 was derived from Section 2(A) of the Bankruptcy Act and has remained substantially the same since its enactment in 1966.

7. The Supreme Court of Florida characterized the nature of tax certificates in *Smith v. Arcadia* at 767, as follows:

    Tax certificates are only a means of evidencing unpaid taxes and to enable the sale thereof for the purpose of realizing funds for current governmental expenditures. The tax certificate does not change the basic nature of the indebtedness.

8. *In re Diez*, 45 B.R. 137, 139 (Bankr.S.D.Fla. 1984), this Court held that abstention from de-

ciding a tax adjudication question under Section 505 is only appropriate upon a showing that uniformity of assessment is of significant importance. Such a showing has not and can not be made in the case at bar. In the 505 Motion, the Debtor challenges only the valuation of the property of the estate, not the rate at which it was taxed. The taxes to be paid by other taxpayers will not be affected.

9. This opinion does not address the issue of who should bear the risk of the possibility that the principal amount of a tax liability may be altered after the liability has been sold to a third party. That issue will likely be addressed in another proceeding, quite possibly in another court, as this appears to be a dispute between two non-debtor parties. *In re Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr.S.D.N.Y.).

## CONCLUSION

Neither the Debtor's failure to contest the tax assessments of its real and personal property within the time specified for doing so under Florida law nor the sale of tax certificates by Indian River County to third parties deprives the Debtor of its statutory right under § 505 of the Bankruptcy Code to seek reassessment of the value of its real and personal property and a determination of the amount of tax due to Indian River County, Florida.

The Court will enter a separate order in accordance with this opinion denying Indian River County's Motion to Dismiss and denying Equivest's Motion to Strike. The Debtor's § 505 motion will be set for evidentiary hearing.