**BEAL BANK, SSB, as Assignee of the Federal Deposit Insurance Corporation as Receiver of Dollar Dry Dock Bank, Plaintiff,**

v.

**NASSAU COUNTY, Medcor Holding Co., and Peter Pekich, Defendant.**

**No. CV 96–1908.**

United States District Court, E.D. New York.

Aug. 5, 1997.

Harris Beach & Wilcox LLP by Matthew E. Hearle, William M. O'Connor, New York City, for Plaintiff.

Office of the Nassau County Attorney, Owen Walsh by Anna Anzalone, Mineola, NY, for Defendant Nassau County.

Peter Pekich by Defendant pro se, West Hempstead, NY.

Medcor Holding Co. by Defendant pro se c/o Peter Pekich, West Hempstead, NY.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, Beal Bank, SSB (hereinafter "plaintiff") brings this action against defendants, Nassau County, Medcor Holding Co. (hereinafter "Medcor"), and Peter Pekich (hereinafter "Pekich"), collectively hereinafter the "defendants," for declaratory relief challenging Nassau County's transfer of property owned by the Federal Deposit Insurance Corporation (hereinafter "FDIC"). More specifically, plaintiff alleges a violation of the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1825(b)(2). Presently before this court is the plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 56(c). For the reasons set forth below, the court grants this motion.

## I. BACKGROUND

The following material facts are not in dispute. On or about November 20, 1987, Suffolk Place Associates, Inc. executed in favor of and delivered to Dollar Dry Dock Bank (hereinafter "DDDB") a promissory note and mortgage on the real property at issue, 1 Julian Place, Island Park, New York (hereinafter "the property"). The mortgage was duly recorded in the Office of the Clerk of the County of Nassau on April 18, 1988. However, as a result of having defaulted on tax payments, on February 18, 1992, defendant Nassau County held a tax lien sale of all of the tax liens from 1991, including those of the aforementioned property. At this sale, defendant Medcor by its principal, Peter Pekich, purchased the tax liens on the property at issue. Three days later, on February 21, 1992, the FDIC was appointed receiver of Dollar Dry Dock Bank, and acting pursuant to 12 U.S.C. § 1821, assumed by operation of law, ownership and control over all of DDDB's assets including the promissory note and mortgage on the real property at issue.

Soon thereafter, pursuant to Section 5-53-0 of the Nassau County Administrative Code, defendant Medcor, sent the FDIC a Notice to Redeem to which the FDIC failed to respond. On approximately July 28, 1994, following the expiration of the redemption period, the Treasurer of Nassau County issued a tax deed to defendant Medcor transferring title to the property to Medcor. This transfer was completed without the consent of the FDIC. Notwithstanding the transfer of title by Nassau County to Medcor, the FDIC subsequently assigned its mortgage interest to Beal Bank on September 21, 1995.

## II. DISCUSSION

### A. Summary Judgment

A party seeking summary judgment must demonstrate to the Court that "there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The non-moving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *Celotex* at 322, 106 S.Ct. at 2552. In ruling on a motion for summary judgment, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donohue* at 57. Once the moving party has brought forth and supported a motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)). If this burden is satisfied the motion must be denied. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Presently, both parties are in agreement as to all of the material facts. The point at which the parties disagree is with respect to the interpretation of relevant statutory provisions. More specifically, the statute in question, 12 U.S.C. § 1825(b)(2) reads as follows:

> When acting as a receiver, the following provisions shall apply with respect to the [FDIC]: ...
>
> (2) No property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC].

12 U.S.C. § 1825(b)(2). With respect to this section, defendants claim that the relevant statutory provision does not offer protection to the FDIC, and by succession Beal Bank, because the FDIC did not have an interest in the property until as late as February 21, 1992, exactly three days after the defendant sold the tax lien to Medcor.

On the other hand, Beal Bank asserts that the statute encompasses all property held by the FDIC, regardless of which party was first in time. This argument is based upon a literal interpretation of the relevant statutory provision. Additionally, Beal Bank claims that as an assignee of the FDIC it is entitled to claim the protections equivalent to those available to the FDIC. Therefore, the only disputes that exist concern matters of law, not issues of fact.

### B. Plain Meaning Interpretation of the Statute

As a general matter, priority determines the order in which liens against property are satisfied. 55 Am.Jur.2d Mortgages § 307 (1996). Competing interests in land have priority in the order of their creation in time. Therefore, an interest in land, including mortgages, that is created first generally has priority over an interest created later from the same source. Notwithstanding this general rule, the Federal Institutions Reform, Recovery and Enforcement Act was created as an exception to this rule in order to ensure a sound financial system. H.R. Conf. Re. No. 222, 101st Cong., 1st Sess. (1989). Specifically, Congress intended that the FDIC "not be subject to any special penalties or forfeitures that might otherwise apply, such as losing a security interest in the property." S.Rep. No. 19, 101st Cong., 1st Sess. 321 (1989), U.S. Code Cong. & Admin. News at 86, 117.

In the instant case, the FDIC does not contest the municipality's authority to assess taxes against real property in which it has an interest. See 12 U.S.C. § 1825(b)(1) (providing that the [FDIC] shall be exempt from all state and local taxation, "except that any real property of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as real property is taxed.") First, the defendants argue that the statute permits the sale of the FDIC

property in instances where liens attached prior to the FDIC's acquisition of the mortgage. According to the defendants, any action which takes place prior to the FDIC's acquisition of the mortgage interest falls outside of the statute. This contention is wholly without merit and is inconsistent with the express language of the statute. All cases of statutory interpretation begin with the plain meaning interpretation of the language in the relevant provision. The language of § 1825(b)(2) unequivocally prohibits the institution of collection techniques, including foreclosure, sale or levy with regard to property owned by the FDIC. According to the unambiguous language of this provision, no involuntary liens may attach while the FDIC is the owner of the property at issue. Consequently, if no liens may attach while the FDIC is the owner, the prohibition against foreclosure or sale of the FDIC property without its consent would be meaningless if the statute referred to liens that did not exist prior to the FDIC taking ownership of the property. Therefore, Congress must have intended for the statute to cover liens that pre-dated FDIC ownership.

Several other circuits have interpreted this provision in a similar manner. (*Simon v. Cebrick*, 53 F.3d 17 (3rd Cir.1995) (holding that mortgages held by the FDIC could not be extinguished through foreclosure of tax liens without the FDIC's consent)); *Donna Independent School District v. Balli*, 21 F.3d 100 (5th Cir.1994) (holding foreclosure on property subject to an FDIC lien was disallowed unless consented to by the FDIC). The Tenth Circuit addressed the issue of whether pre-existing liens warranted a different result when it noted:

> The text of section 1825(b)(2) is unequivocal and suggests no implied exception. Further, the statute provides no involuntary lien may attach to the FDIC's property. If no lien may attach during the FDIC's ownership, the prohibition against foreclosure or sale of the FDIC's property without its consent can only refer to enforcement of liens which attached to the property before the FDIC came into title.

*Federal Deposit Insurance Corporation v. Lowery*, 12 F.3d 995 (10th Cir.1993). Simply put, in *Federal Deposit Insurance Corporation v. Lowery* the Court stated that local authorities could not sell FDIC property without its consent, regardless of whether the tax lien attached before or after the FDIC acquired the property.

■ Second, defendants assert that the FDIC manifested tacit consent to the transfer of the property by its failure to answer the Notice to Redeem or pay the amount of taxes and interest on the property due to Medcor. Under the present circumstances, it is clear that the FDIC never manifested consent. The FDIC neither expressly nor implicitly agreed to the foreclosure of the property. Furthermore, the FDIC's silence cannot be construed as tacit consent. This is evidenced by the policy statement issued by the FDIC on June 4, 1991, prior to the mailing of the Notice to Redeem, entitled the FDIC–LRRA—FDIC STATEMENT OF POLICY REGARDING THE PAYMENT OF STATE AND LOCAL PROPERTY TAXES. Within this statement the FDIC made it clear that its consent is required before its interest can be eliminated by foreclosure. The relevant section of this policy statement reads:

> Foreclosure: No property of the [FDIC] is subject to levy, attachment, garnishment, foreclosure, or sale without the [FDIC's] consent. Furthermore, a lien for taxes and interest may attach, but the [FDIC] will not permit a lien or security interest held by it to be eliminated by foreclosure without the [FDIC's] consent.

FDIC–LRRA, FDIC–LRRA—FDIC STATEMENT OF POLICY REGARDING THE PAYMENT OF STATE AND LOCAL PROPERTY TAXES 8/91 (June 4, 1991). Such a policy is necessary at the FDIC where a bank failure results in thousands of loans becoming new FDIC property. The FDIC cannot possibly be faced with the need to preserve its rights for each notice it receives as a result of taking over for failed banks. This Court concludes that the intent of Congress was to protect the FDIC's interest in property, regardless of the presence of pre-existing liens.

Accordingly, since the FDIC did not manifest consent, and the statute requires consent

by the FDIC prior to extinguishing any interest in the property, the deed from Nassau County to Medcor transferring title in the premises is invalid. The tax lien, owned by Medcor, remains unaffected and is a valid encumbrance on the property.

## C. Rights of Beal Bank as Assignee

■ The issue remains whether Beal Bank, as assignee, may assert the same rights and privileges accorded to the FDIC. For the reasons that follow we conclude that an assignee may assert the same legal rights which the FDIC could have asserted had the FDIC not made the assignment.

■ It is axiomatic that an assignee takes all of the rights of the assignor, no greater and no less. An assignee becomes "subject to all equities and burdens to property assigned because he receives no more and can do no more than his assignor." *State Bank of India v. Walter E. Heller & Co.*, 655 F.Supp. 326 (S.D.N.Y.1987). Moreover, when rights are transferred to an assignee, he receives the same legal rights as the assignor, no more and no less. See *Kolbeck v. LIT America, Inc.*, 923 F.Supp. 557 (S.D.N.Y.1996). In addition, courts have held that federal banking regulations can be applied for the benefit of an assignee, purchaser or successor in interest of the *Federal Savings & Loan Insurance Corp. v. Griffin*, 935 F.2d 691, 698 (5th Cir.1991); *In Re: Woodstone Limited Partnership*, 149 B.R. 294, 297 (E.D.N.Y.1993).

Beal Bank became a successor in interest after purchasing the mortgage from the FDIC. Accordingly, Beal Bank is entitled to assert all rights and privileges that the FDIC would have been permitted to rely upon. As a result of having concluded that the FDIC was entitled to rely upon § 1825(b)(2) to prevent foreclosure of the property, it is the opinion of this Court that Beal Bank may rely on this provision to have the tax deed declared void. Moreover, to find otherwise would undermine the entire purpose of § 1825(b)(2) because providing the FDIC's successors in interest with less rights than the FDIC would effectively deprive the FDIC of the ability to market the loans it takes over in order to recoup whatever funds it can. Congress' purpose in creating the Financial Institutions Reform, Recovery and Enforcement Act would be frustrated if the FDIC's lien protections disappeared as soon as the FDIC attempted to sell its property interests. Although the Medcor deed is void pursuant to the Financial Institutions Reform, Recovery and Enforcement Act, the obligation to satisfy the tax lien remains pursuant to § 1825(b)(1). This pre-receivership lien attached to and remained with the property upon its sale to Beal Bank. Thus, Beal Bank is liable for the amount of the tax lien.

## III. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted. The deed of conveyance to Medcor is void pursuant to 12 U.S.C. § 1825(b)(2), which forbids the "levy, attachment, foreclosure, or sale without the consent of the [FDIC]." 12 U.S.C. § 1825(b)(2). Absent consent, foreclosure of the FDIC property is not an available means of recovering the relevant property taxes. Furthermore, a literal reading of the statute evidences that the statute was intended to reach pre-existing liens as well. Additionally, plaintiff as the assignee to the FDIC, is entitled to assert all rights and privileges available to the FDIC. Finally, as the assignee to the FDIC, Beal Bank remains obligated to pay the tax lien held by Medcor pursuant to 12 U.S.C. § 1825(b)(1).

SO ORDERED.