In re NEW HAVEN PROJECTS LTD. LIABILITY CO., Debtor.

New Haven Projects Ltd. Liability Co., Debtor–Appellant,

v.

City of New Haven, First Union National Bank, as Trustee for the New Haven TLC Trust 1995–1, and Breen Capital Investment Corporation, Appellees,

United States Trustee, Trustee.

Docket No. 99–5073.

United States Court of Appeals, Second Circuit.

Argued April 20, 2000.

Decided Sept. 14, 2000.

Amended Sept. 20, 2000.

284

Eugene Mittelman, Sherman, Citron & Karasick, P.C., (Howard Karasick, on the brief), New York, NY, for debtor-appellant.

Marylou Scofield, Assistant Corporation Counsel for the City of New Haven, New Haven, CT, for appellee City of New Haven.

David Doyle, The Marcus Law Firm, (Marjorie R. Gruszkiewicz, on the brief), New Haven, CT, for appellees First Union National Bank as Trustee for the New Haven TLC Trust 1995–1 and Breen Capital Investment Corporation.

Before: SOTOMAYOR and KATZMANN, Circuit Judges.*

* The Honorable Ellsworth A. Van Graafeiland was originally assigned as a member of the panel but, due to illness, did not attend oral argument or participate in the disposition of this appeal. The appeal is being determined by the remaining members of the panel, who are in agreement. See 2d Cir. R. § 0.14(b);

## AMENDED OPINION

SOTOMAYOR, Circuit Judge:

Appeal from an order of the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge* ) affirming a decision of the United States Bankruptcy Court for the District of Connecticut (Albert S. Dabrowski, *Bankruptcy Judge* ). The bankruptcy court declined to conduct a redetermination of tax ̀liability as permitted under 11 U.S.C. § 505 for a debtor in bankruptcy proceedings. Debtor-appellant argues that the bankruptcy court is required to conduct such a review except under a certain narrow range of circumstances not present here. Debtor-appellant further argues that even if the bankruptcy court were to have broader discretion in deciding when to conduct a Section 505 review, the court in this case relied upon an erroneous finding in reaching its decision, treating the only party likely to benefit from Section 505 review as an insider creditor. Rejecting both of these contentions, we affirm.

## BACKGROUND

The facts relevant to the instant appeal are not disputed by the parties. On December 17, 1987, New Haven Projects No. 1 Corporation ("NHP Corp.") was organized under the laws of Connecticut with Mitchel Maidman as its president and director. In August 1988, NHP Corp. conveyed several real properties in New Haven, Connecticut ("the Properties") to another entity, New Haven Associates Limited Partnership ("NHP Partnership"), whose general partners were Richard Maidman and NHP Corp.

Following its acquisition of the Properties, NHP Partnership obtained mortgages secured by the Properties from the New Connecticut Bank and Trust Company. Shortly thereafter, the Federal Deposit Insurance Corporation ("FDIC") exercised receivership over the bank and became the creditor for the Properties' mortgages.

In 1991, the City of New Haven ("City") reassessed the value of NHP Partnership's Properties pursuant to Conn. Gen Stat. § 12–62 (1993) to determine the market value of real estate for the purpose of levying property taxes. The City increased its assessment of the Properties from approximately $423,000 to over $980,000, and for the years 1991–1995, the City levied taxes based on the new assessment. NHP Partnership made no effort to contest the City's new tax assessment within the one year statute of limitations imposed by Connecticut law. *See* Conn. Gen.Stat. § 12–119 (1993). NHP Partnership then failed to pay these property taxes for the period 1991–1995. The City filed liens against the Properties and later transferred its rights under the tax liens to two entities, First National Bank as Trustee for the New Haven TLC Trust 1995–1 and Breen Capital Investment Corporation ("the Tax Lien Purchasers").

On September 11, 1996, debtor-appellant New Haven Projects, LLC ("Debtor") was formed under the laws of Connecticut with Scott Hurwitz as its resident agent. Debtor's address was given as 432 East 87th Street, New York City, the same office address given for Mitchel Maidman and Richard Maidman at the time NHP Corp. and NHP Partnership were formed. According to the record, NHP Corp. owned 99% of Debtor with the remaining 1% interest owned by New Haven Surplus, LLC ("New Haven Surplus"), a Connecticut LLC, also with Scott Hurwitz as its resident agent.

On September 12, 1996, one day after Debtor was formed, NHP Partnership conveyed the Properties to Debtor. The following day, September 13, 1996, Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. On December 10, 1996, the case was transferred to the United States Bankruptcy Court for the

*Murray v. National Broad. Co.,* 35 F.3d 45, 46    (2d Cir.1994).

District of Connecticut. Finally, on December 16, 1996, the FDIC assigned its mortgages against the Properties to another entity, the W.M. Maidman Family Limited Partnership ("Maidman Trust"), also located at 432 East 87th Street, New York City.

Debtor's bankruptcy petition listed several unsecured creditors presenting a total of less than $8,000.00 in claims, representing at most approximately one half of a percent of the debt structure of Debtor.

On September 15, 1997, Debtor moved the bankruptcy court to review and reduce its tax liability for the period 1991–1995 pursuant to 11 U.S.C. § 505(a) (1994), and to determine tax liability for the period following the filing of the bankruptcy petition pursuant to 11 U.S.C. § 503(b)(1)(B) (1994). The bankruptcy court declined to conduct a Section 505 review, however, finding that the claims of the unsecured creditors were *de minimis*, failing to justify Section 505 review, and that the secured creditor Maidman Trust was an insider creditor, and, along with the Maidman family, controlled Debtor and its predecessors such that any reduced tax assessment would result in a windfall to Debtor and its affiliates at the expense of the City and the Tax Lien Purchasers.

On May 7, 1999, the district court affirmed the bankruptcy court's decision and this appeal followed.

## DISCUSSION

█ Reviewing this matter on appeal, "[t]he district court's order affirming the bankruptcy court is 'subject to plenary review.'" *Tudisco v. United States (In re Tudisco)*, 183 F.3d 133, 136 (2d Cir.1999) (quoting *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990)). Accordingly,

we review conclusions of law *de novo* and findings of fact for clear error. *Id.*

█ Debtor challenges the bankruptcy court's decision to abstain from redetermining the value of the Properties pursuant to 11 U.S.C. § 505, which defines the parameters of a bankruptcy court's jurisdiction to determine a debtor's tax liability as follows:

(a)(1) ˮExcept as provided in paragraph (2) of this subsection, *the court may determine the amount or legality of any tax,*[2] any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title. . . .

11 U.S.C. § 505(a) (1994) (emphasis added).

█ Subject to certain limitations, § 505 empowers a bankruptcy court to redetermine the amount of a debtor's tax liability even when a debtor has failed to comply with state law procedures for challenging such liabilities, including applicable state law statutes of limitations. See *In re Piper Aircraft Corp.*, 171 B.R. 415, 418 (Bankr.S.D.Fla.1994); *see also Metropolitan Dade County v. Kapila (In re Home and Housing of Dade County, Inc.)*, 220 B.R. 492, 494–95 (S.D.Fl.1998) (stating that under 11 U.S.C. § 505, "[t]he debtor is given a renewed opportunity to contest the amount due for taxation, and the bankruptcy court is not bound by time limits to

---

**2.** The phrase "any tax" encompasses both federal and state tax liabilities, including state real property taxes, state sales taxes, city *ad valorem* taxes, federal income taxes, and fed-

eral employment taxes. *See In re Galvano*, 116 B.R. 367, 372 n. 6 (Bankr.E.D.N.Y.1990) (citing cases).

determine the amount of taxes applicable in any other forum"); *In re 499 W. Warren Street Assocs. Ltd.,* 143 B.R. 326, 329 (Bankr.N.D.N.Y.1992) (same). As one bankruptcy court has explained:

> The broad grant of jurisdiction contained in § 505 makes no reference to time periods imposed by state law.... [A] debtor as representative of the bankruptcy estate is allowed to contest tax debts in the bankruptcy court even though his prior inaction would bar him from contesting them elsewhere. This is permitted on the ground that taxes with their priority impose a special problem for creditors, and creditors should not be prejudiced by a debtors's inaction.

*Ledgemere Land Corp. v. Ashland (In re Ledgemere Land Corp.),* 135 B.R. 193, 196–97 (Bankr.D.Mass.1991).

■ Debtor argues that the bankruptcy court in this case was required to redetermine its tax liability under § 505. According to Debtor, a court may abstain from making such a redetermination only upon a showing that uniformity of tax assessments is of significant importance to the governmental entities involved. While all parities agree that the need to maintain a uniformity of tax assessments may certainly be considered by a court in determining whether to reassess taxes under § 505, the dispute here surrounds whether a court may, in its discretion, consider additional factors when deciding whether to conduct a § 505 redetermination of tax liability.

In support of its interpretation of Section 505, Debtor relies upon two bankruptcy court cases, *In re Fairchild Aircraft* and *In re AWB Associates.* In *Fairchild Aircraft,* the bankruptcy court stated that

> abstention from deciding a tax adjudication question under Section 505 is only appropriate upon a showing that uniformity of assessment is of significant importance. No such showing has been made here. If the tax rate were the subject of this motion, perhaps abstention might be appropriate. Because the

trustee only challenges the excessiveness of the appraisal district's valuation of the estate's property, the taxes to be paid by other taxpayers will not be affected, nor will uniformity of assessment be placed in issue (i.e., the overall valuation methodology used by the appraisal district is not being generally attacked).

*In re Fairchild Aircraft Corp.,* 124 B.R. 488, 491 (Bankr.W.D.Tex.1991) (citations omitted). The bankruptcy court in *In re AWB Assoc.,* 144 B.R. 270, 277–78 (Bankr. E.D.Pa.1992), later quoted approvingly from the same opinion, finding "that the correct analysis of the abstention issue is thusly enunciated in *Fairchild Aircraft.*" *Id.* at 276. Debtor relies, therefore, on the explicit language of these cases that "abstention from deciding a tax adjudication question under Section 505 is *only* appropriate upon a showing that uniformity of assessment is of significant importance." *Fairchild Aircraft,* 124 B.R. at 491 (emphasis added); *AWB,* 144 B.R. at 276 (quoting *Fairchild Aircraft,* 124 B.R. at 491).

■■ To the extent that *Fairchild Aircraft* and *AWB* hold that a bankruptcy court's jurisdiction under Section 505 is mandatory in the absence of "uniformity of assessment" concerns, we firmly reject this interpretation of the statute. To understand why, we look first to the plain language of the statute that provides that "the court *may* determine the amount or legality of any tax...." 11 U.S.C. § 505(a)(1) (emphasis added). This Court has observed that "[t]he verb 'may' generally denotes a grant of authority that is merely permissive." *International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1005 (2d Cir.1993). We are persuaded that the ordinary meaning of the word "may" applies here because nothing in § 505 suggests otherwise and because Congress elsewhere in the Bankruptcy Code has chosen the word "shall" to denote mandatory requirements. *Compare* 11 U.S.C. § 505(a)(1) (1994) ("the court *may* determine ...") (emphasis added), *with* 11

U.S.C. § 503(b) (1994) ("After notice and a hearing, there *shall* be allowed administrative expenses ....") (emphasis added). As the Supreme Court has explained, "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

Second, contrary to Debtor's contention, nothing in the legislative history of Section 505 favors the interpretation articulated by the *Fairchild Aircraft* court. Subsections (a) and (b) of § 505 were

> derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act [section 11(a)(2A) of former Title 11].... As under Bankruptcy Act [former] section 2a(2A), *Arkansas Corp. Comm'n v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), remains good law to *permit* abstention where uniformity of assessment is of significant importance.

11 U.S.C.A. § 505, Historical and Statutory Notes at 723 (1993) (emphasis added). In our view, this language simply clarifies that under the current version of Section 505, a bankruptcy court has the discretion to abstain from redetermining a debtor's tax liability where uniformity of assessment is of significant importance.

Finally, we note that an overwhelming number of courts have observed that § 505(a)(1) vests the bankruptcy court with general discretionary authority to redetermine a debtor's tax liability. *See, e.g., In re Onondaga Plaza Maintenance Co.*, 206 B.R. 653, 656 (Bankr.N.D.N.Y. 1997) (stating that a court's authority under Section 505 is "discretionary"); *In re Marcellus Wood & Trucking, Inc. v. Michigan Employment Sec. Comm'n (In re Marcellus Wood & Trucking, Inc.)*, 158 B.R. 650, 654 (Bankr.W.D.Mich.1993) (same); *In re Swan*, 152 B.R. 28, 30 (Bankr.W.D.N.Y.1992) (same); *AWB*, 144 B.R. at 275–76 (same); *Queen v. United States (In re Queen)*, 148 B.R. 256, 259 (S.D.W.Va.1992) (same); *El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.)*, 128 B.R. 153, 161 (Bankr.W.D.Tex.1991) (same); *Galvano*, 116 B.R. at 372 (same).

Therefore, based on the plain language of the statute, its legislative history, and relevant case law, we interpret the verb "may" in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes. This authority is not limited solely to instances where uniformity of tax assessments is of significant importance. *See Northbrook Partners, LLP v. Hennepin (In re Northbrook Partners, LLP)*, 245 B.R. 104, 118 n. 26 (Bankr.D.Minn.2000) ("The *Fairchild Aircraft Co.* court was correct in recognizing that abstention under § 505(a) is appropriate where 'uniformity of assessment is of significant importance.' *It was not correct in holding that abstention is appropriate only then.*") (emphasis added).

The exercise of such discretion is, of course, subject to the explicit limitations in Section 505 itself, and must be informed by the purpose underlying the statute. Specifically, in determining whether to abstain from redetermining tax liability in a given case, a court must

> assure itself that the legislative purpose for drafting this provision, namely to protect the interests of both debtors and creditors, is met. Creditors are entitled to protection from the "dissipation of an estate's assets" in the event that the debtor failed to contest the legality and amount of taxes assessed against it. Having the bankruptcy court adjudicate the matter may also afford an alternative forum for proceedings that might otherwise delay the orderly administration of the case and distribution to the debtor's creditors.

*Onondaga*, 206 B.R. at 656 (citations and internal quotations omitted). *See also City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n*, 898 F.2d 122, 125 (10th Cir.1990) (stating that § 505 serves

to protect "creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." (citations and internal quotation marks omitted)); *Piper Aircraft,* 171 B.R. at 418 (*quoting Ledgemere Land,* 135 B.R. at 196–97); *AWB,* 144 B.R. at 277–78.[3]

■ In light of these important considerations, bankruptcy courts have properly looked to a number of factors when deciding whether to exercise their authority under 11 U.S.C. § 505, including (1) the complexity of the tax issue; (2) the need to administer the bankruptcy case in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors. *See Northbrook,* 245 B.R. at 118; *In re D'Alessio,* 181 B.R. 756, 759–60 (Bankr. S.D.N.Y.1995); *AWB,* 144 B.R. at 276; *Galvano,* 116 B.R. at 372.

■ Applying a similar analysis to the case before us, the bankruptcy court noted that some factors favored the exercise of jurisdiction under § 505, namely that the tax issues involved were not complex, (A 29) and that redetermination of tax liability would not be overly time-consuming or burdensome for the bankruptcy court. The bankruptcy court elected to abstain from engaging in a § 505 review, however, for two principle reasons. First, the court observed that the amount of unsecured debt was "*de minimis.*" Second, the court determined that

> [w]hat the Debtor is requesting in this case ... would only benefit the Debtor

and [its] affiliates and insiders and the real controlling interest, the Maidmans and Maidman Trust.

> That benefit ... would be an inappropriate windfall at great expense to the City and to the Tax Lien Purchasers.

> The motion not only does not advance ... what the court views to be the primary purpose underlying the enactment of Section 505, it serves no purpose contemplated by Section 505 and, indeed, in this Court's view, defies the spirit of that statute and visits undue prejudice on the responding parties.

As an initial matter, we note, as did the bankruptcy court, that certain factors counsel in favor of § 505 review. We also agree with the bankruptcy court's conclusion that the unsecured creditors would not meaningfully benefit from Section 505 review because their claims, totaling less than $8,000, are *de minimis.* Finally, based on the interrelationship between the Maidman Trust, the Maidman family members, Debtor, and Debtor's affiliates, we find no clear error in the bankruptcy court's factual finding that the Maidman Trust should be treated as an insider of Debtor. To support its finding, the bankruptcy court explained that

> the Maidmans and/or the Maidman Trust control the Debtor, its members, controlled the Debtor's predecessors and its members, and have exercised full and complete control over those entities since their inception....

> [T]heir hand and footprints are found throughout and all over these entities. They formed and controlled the Debtor's predecessor; they formed and controlled the Debtor's members or they are the Debtor's members.... They, through

---

3. Congress has also built into Section 505 "certain safeguards to protect states from unwarranted federal intrusion." *In re Super Van, Inc.,* 161 B.R. 184, 192 (Bankr.W.D. Tex. 1993). For example, if the amount or legality of a tax was contested before and adjudicated by any judicial or administrative tribunal of competent jurisdiction before the commence-

ment of the bankruptcy case, then relief under Section 505 is not available. *See* 11 U.S.C. § 505(a)(2)(A). *See also See Northbrook Partners,* 245 B.R. at 118 (recognizing the need to weigh the goals of promoting bankruptcy relief against the state's interest in applying and enforcing its own law).

the exercise of that control, created the Debtor itself. The next day, the day following the creation of the Debtor, they provided the Debtor or facilitated the provision to the Debtor of all of its assets including specifically the [ ] Properties in this case. . . .

They then caused by virtue of their control a [Section] 505 motion to be filed with this court whose obvious purpose was to seek to advantage themselves of the monetary benefit that would flow from the granting of that motion and which the Court finds would create a six-figure windfall to the Debtor, to the Debtor's affiliates, insiders, and to the related controlling parties and entities which I referred to as the Maidmans and the Maidman Trust.[4]

■ Based on these findings, it is clear that an insider creditor-the Maidman Trust-is the only party that would likely benefit from Section 505 review. At the same time, a reassessment of the Properties would threaten to prejudice the Tax Lien Purchasers and the City of New Haven as outside creditors. Section 505 was enacted to protect creditors from the prejudice caused by an ailing debtor's failure to contest tax assessments. *See, e.g., City Vending of Muskogee,* 898 F.2d at 125; *Piper Aircraft,* 171 B.R. at 418; *AWB,* 144 B.R. at 277. It was not enacted to afford debtors a second bite at the apple at the expense of outside creditors. Because the exercise of Section 505 review in this case would frustrate the purpose of the statute, we affirm the bankruptcy court's decision to abstain from redetermining Debtor's tax liability.

**4.** Debtor also contends that the Maidman Trust must, as a matter of law, be deemed an outsider creditor of Debtor because, as a successor to the FDIC, it is "cloaked with all of the FDIC's rights and privileges," including the right to outsider status. Appellant's Br. at 11–13 (citing *Beal Bank, SSB v. Nassau County,* 973 F.Supp. 130 (E.D.N.Y.1997)). The case cited by Debtor, however, stands merely for the unremarkable proposition that "an assignee takes all of the rights of the assignor, no greater and no less." *Beal Bank,* 973

## CONCLUSION

We have considered Debtor's arguments and find them to be without merit. Accordingly, the district court order affirming the bankruptcy court's decision is affirmed.

F.Supp. at 134. While the Maidman Trust certainly acquired the *rights* afforded to the FDIC in relation to the Properties, *see, e.g.,* 12 U.S.C. § 1825(b)(2) (1994) (stating that "[n]o property of the Corporation [i.e. FDIC] shall be subject to levy, attachment, garnishment, foreclosure or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation"), we are aware of no authority for the proposition that the FDIC's outsider *status* constituted an assignable *right.*