**In re THE RAILROAD STREET PARTNERSHIP, Debtor.**

No. 99–65541.

United States Bankruptcy Court, N.D. New York.

Nov. 27, 2000.

---

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, of counsel), Syracuse, NY, for debtor.

John Stone, Assistant Corporation Counsel, Syracuse, NY, for City of Syracuse.

Green & Seifter (Michael Balanoff, of counsel), Syracuse, NY, for Creditor Coolidge Washington Street LLC.

## MEMORANDUM—DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court has before it the motion of The Railroad Street Partnership ("Debtor"), filed on August 10, 2000, requesting that the Court determine tax liability on two parcels of real property owned by the Debtor and located in Syracuse, New York, pursuant to § 505(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). Opposition to the Debtor's motion was filed on August 24, 2000, on behalf of the City of Syracuse ("City").

The motion was heard at the Court's regular motion term in Syracuse on August 29, 2000. After hearing oral argument, the Court provided both parties with an opportunity to file memoranda of law, and the matter was submitted for decision on September 12, 2000.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), (b)(2)(A) and (O).

## FACTS

The Debtor filed a voluntary petition ("Petition") seeking relief pursuant to chapter 11 of the Code on October 18, 1999. The Debtor is the owner of two commercial buildings located in Syracuse at 201 South Salina Street (the "White Memorial Building") and 205–213 South Salina Street ("Salina Place") (hereinafter jointly referred to as the "Properties"). The Properties were allegedly acquired by the Debtor in the mid–1980's.

According to the City, the Debtor previously appeared before the City of Syracuse Board of Assessment Review ("Assessment Board") contesting the tax assessments on the Properties pursuant to Article 5 of New York Real Property Tax Law ("NYRPTL"). The hearings appear to have been held on February 19, 1999 on the 1999/2000 assessments and on February 18, 2000 on the 2000/2001 assessments.[1] Debtor's counsel does not deny that the Debtor was represented by counsel and appeared at the hearings. The Debtor acknowledges having commenced proceedings to judicially review its assessments for the years 1998/1999, 1999/2000 and 2000/2001 pursuant to Article 7 of the NYRPTL in New York State Supreme Court ("State Court") in which "pleadings have been exchanged."

## ARGUMENTS

Debtor's counsel would have the Court revisit its decision in *In re Onondaga Plaza Maintenance Co., Inc.,* 206 B.R. 653 (Bankr.N.D.N.Y.1997). It is the Debtor's position that Code § 505(a) is based on principles of *res judicata* which require a full and fair hearing. It is the Debtor's contention that the determination by the Assessment Board was not a *final* adjudication of a type envisioned by Congress.

Counsel for the City takes exception to the Debtor's interpretation of Code § 505(a). Code § 505(a)(2) prohibits the Court from determining the amount of a tax "if such amount ... was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case...." 11 U.S.C. § 505(a)(2). The City points out that in *Onondaga Plaza Maintenance* this Court thoroughly reviewed the applicable provisions of Article 5 of the NYRPTL and concluded that the Assessment Board is "quasi-judicial" and that the procedures set forth under Article 5 of NYRPTL provide a debtor with a full and fair opportunity for a hearing before the Assessment Board. The Court found that the assessments on the debtor's real property for 1994/95 had been "adjudicated" by an administrative or judicial tribunal of competent jurisdiction and that it had no authority to determine the amount of tax liability on the real property. *See id.* at 606.

## DISCUSSION

■ "Congress has [ ] built into Section 505 'certain safeguards to protect states from unwarranted federal intrusion.'" *In re New Haven Projects, LLC,* 225 F.3d 283, 289 n. 3 (2d Cir.2000) (quoting *In re Super Van, Inc.,* 161 B.R. 184, 192 (Bankr. W.D.Tex.1993)). This includes the prohibition of Code § 505(a)(2)(A), which prevents a bankruptcy court from determining the amount of tax liability when the issue has already been addressed prepetition by any judicial or administrative tribunal of competent jurisdiction. *See New*

---

1. In addition to the 1999/2000 and 2000/2001 assessments, the Debtor is also seeking a determination by this Court of the 1998/1999 assessments. Although there is nothing in the record to indicate when the 1998/1999 hearing before the Assessment Board was held, based on the arguments presented by counsel and for purposes of this decision, the Court will assume a hearing was held in February 1998.

*Haven Projects,* 225 F.3d at 289 n. 3. In this case, the Assessment Board held hearings on the assessments for the tax years 1998/1999 and 1999/2000 prior to the commencement of the Debtor's case.

In *Onondaga Plaza Maintenance* the debtor sought intervention of the bankruptcy court in connection with the 1994/95 tax year for which there had been a determination of tax liability in connection with the debtor's real property by the same Assessment Board. The debtor had filed a petition for review by the State Court pursuant to Article 7 of the NYRPTL. The State Court had dismissed the debtor's petition pursuant to NYRPTL § 702 for failing to timely file and serve it.

■ In this case, there has been no determination of any kind by the State Court in connection with the Article 7 proceedings commenced by the Debtor. Debtor's efforts to distinguish this situation from that of *Onondaga Plaza Maintenance* are unconvincing. Code § 505 makes it clear that adjudication by an entity such as the Assessment Board was contemplated by Congress when it referenced an adjudication by either a judicial or administrative tribunal. There is no language in the statute to indicate that the adjudication must be "final." The fact that the determination of the Assessment Board is subject to further review by the State Court does not alter the fact that the Debtor had a fair and full opportunity to present its case to the Assessment Board and that an adjudication was made by a tribunal of competent jurisdiction. To consider the assessments on the Properties for 1998/1999 and 1999/2000 when Article 7 review is pending in State Court would be an unwarranted federal intrusion in the view of this Court. Accordingly, the Court declines to determine the assessments on the Properties for 1998/1999 and 1999/2000.

■ There remains the question of whether this Court should address Debtor's tax liability in connection with the year 2000/2001. Because the hearing before the Assessment Board for that particular year occurred postpetition, it is within the Court's discretion whether or not to redetermine the amount of the Debtor's tax liability pursuant to Code § 505(a)(1). *Id.* at 288. In this regard, the Second Circuit Court of Appeals in *New Haven Projects* pointed out that "a bankruptcy court has the discretion to abstain from redetermining a debtor's tax liability where uniformity of assessment is of significant importance." *Id.* The court also acknowledged a number of other factors that may be appropriate to consider when deciding whether to abstain from exercising jurisdiction under Code § 505, including

(1) the complexity of the tax issue; (2) the need to administer the bankruptcy case in an expeditious fashion; (3) the burden on the bankruptcy court's docket; (4) the length of time necessary to conduct the hearing and to render a decision thereafter; (5) the asset and liability structure of the debtor; and (6) the potential prejudice to the debtor, the taxing authority, and creditors.

*Id.* at 289 (citations omitted).

In *Onondaga Plaza Maintenance* this Court, after considering the above factors, abstained from a determination of tax liability for the 1993/1994 tax year for which there had been no prior review sought before either the assessment Board on the State Court based on the fact that the City of Syracuse was the debtor's only creditor and a decision in State Court concerning several other tax years was expected in approximately 8 weeks.

In *New Haven Projects,* the owner of the real property had failed to contest the city's tax assessments within the year statute of limitations. The bankruptcy court abstained from any determination of the debtor's tax liability based on a finding that the unsecured debt was "de minimus" and any benefit to be derived from a favorable determination by the bankruptcy court would inure to the benefit of the

debtor and its affiliates, as well as other insiders. *See New Haven Projects,* 225 F.3d at 289. The bankruptcy court concluded that the debtor's motion " 'defies the spirit of [Section 505] and visits undue prejudice on the responding parties.' " *Id.*

At the hearing on August 29, 2000, Debtor's counsel argued that the assessment for 2000/2001 would have an immediate impact on the feasibility of the Debtor's plan and Debtor's ability to obtain refinancing. Debtor's counsel takes the position that having the matter decided in this Court would provide a more expeditious resolution to the matter than if the Debtor had to wait for a determination in State Court. Based on a letter from Sidney Devorsetz, Esq., who has allegedly been involved in many tax challenges in State Court, Debtor's managing partner, Anthony Fiorito, estimates that "it is not unusual for the challenge [in State Court] to take up to 11 months to reach trial." *See* Affirmation of Anthony Fiorito, filed September 12, 2000, and Exhibit "A" attached thereto. The basic process described by Mr. Devorsetz is confirmed by the City's counsel. *See* Affidavit of John G. Stone, Esq. ("Stone"), sworn to September 7, 2000. Stone estimates that it takes 3–4 months for an exchange of appraisals from the date of the filing of the trial note of issue. *See id.* at ¶ 35. He also estimates it taking another 1–2 months for the trial to commence. *Id.* at ¶ 33. Neither party has provided the Court with any definitive information concerning the trial in State Court for the 1998/1999 and 1999/2000 years, other than to indicate that "pleadings had been exchanged."

Whether this Court could make a determination regarding the 2000/2001 tax year any sooner than the State Court is uncertain. Matters currently under submission for decision by the Court have increased significantly in the last year, as evidenced by the fact that it has taken the Court approximately 2 months to address this motion. The fact that the Debtor timely challenged the tax assessments by filing grievances with the Assessment Board and seeking further review pursuant to Article 7 of the NYRPTL relieves the Court of any concerns it might otherwise have in assuring that the creditors are protected from " 'dissipation of any estate's assets' in the event that the debtor failed to contest the legality and amount of taxes assessed against it." *Id.* at 288. The process is underway in State Court to address the 1998/1999 and 1999/2000 tax years. Were this Court to agree to determine the Debtor's liability for 2000/2001 on the same two Properties, it could well result in inconsistent assessments. The Court empathizes with the Debtor's desire to expedite the process in order to obtain some semblance of certainty as it formulates its plan of reorganization. However, under the circumstances, this Court concludes that uniformity of assessment is of "significant importance" and a determination by it pursuant to Code § 505(a)(1) would be unwarranted and inappropriate.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion seeking a determination of tax liability with respect to the Properties for 1998/1999, 1999/2000 and 2000/2001 pursuant to Code § 505 is denied.