REVISED - MAY 22, 1998

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-20629

In the Matter of TRANS STATE OUTDOOR ADVERTISING CO., INC.

Debtor

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,

Appellee,

VERSUS

TRANS STATE OUTDOOR ADVERTISING CO., INC.,

Appellant.

Appeal from the United States District Court
For the Southern District of Texas

May 18, 1998

Before REAVLEY, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Trans State Outdoor Advertising Co., Inc. appeals the decision of the district court reversing the bankruptcy court and finding that it lacked jurisdiction under 11 U.S.C. § 505(a)(2)(A) to redetermine the tax liability assessed by the Comptroller. Finding no error, we affirm the district court.

BACKGROUND

In 1991, the Comptroller performed a sales and use tax audit on Trans State Outdoor Advertising Co, Inc. (hereinafter "Trans State")for the audit period October 1, 1987 through June 30, 1991. In November 1991, the Comptroller issued an invoice to Trans State assessing a deficiency due to taxable purchases for which no tax was paid. In December 1991, Trans State sent a letter to the Comptroller, requesting a redetermination hearing on the Comptroller's sales and use audit assessment. This letter initiated Administrative Hearing No. 29,369. The Tax Division of the Comptroller filed its position letter. Trans State responded asserting that some of the invoices scheduled in the audit were the result of purchases by companies other than Trans State. Trans State blamed its former president and accountant for misapplying Trans State funds by using Trans State's funds and name for purchases without authority to do so. The Tax Division responded that because there was no documentation presented to support the removal of the invoices at issue from the audit, and because the invoices were billed in Trans State's name and paid with Trans State funds, Trans State was responsible for the sales tax liability.

The Administrative Law Judge considered all the submissions and entered his Proposed Comptroller's Decision on August 14, 1992. The Administrative Law Judge recommended that the audit stand without change. Trans State filed written exceptions to the proposed Decision, to which the Tax Division responded. The

Administrative Law Judge issued the Comptroller's Decision on January 21, 1993, rejecting Trans State's contention that the tax liability was the responsibility of another company that had used Trans State's funds and name for the invoices at issue, without authorization. On the same date, the Comptroller issued the Order of the Comptroller, approving and adopting the decision of the Administrative Law Judge. The order became final twenty days thereafter. Trans State did not appeal the order.

On February 24, 1993, Trans State filed a bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. On August 16, 1993, the Comptroller filed a claim for prepetition sales and use taxes and interest, in the amount of $41,318.46.

The Chapter 11 plan was confirmed on August 18, 1994. In October 1994, Trans State filed an objection to the allowance of the Comptroller's claim in its bankruptcy. The bankruptcy court held a hearing and concluded in a letter ruling that it had jurisdiction to hear the claims objection. At the trial on the merits, Trans State representatives testified that Trans State had entered into oral agreements with contractors from which it made purchases to include all sales taxes in the contractors' invoices, and that Trans State did not owe taxes to the state because Trans State had paid the taxes to the contractors. The auditor from the Comptroller's office testified that Trans State had no records to support its assertion that it had paid the taxes to the sellers when the purchases were made.

The bankruptcy court issued a second letter ruling in May

1996, finding that Trans State had requested that its supplier of materials and services include the sales taxes in its invoice and that the seller agreed to do so.  The bankruptcy court agreed with the Comptroller that the sales tax was not separately stated on the seller's invoices and that there was no written statement that the stated price included the tax.  Despite the absence of such documentation which is required by the Texas Tax Code, the bankruptcy court concluded that Trans State, the purchaser, did not owe any taxes to the Comptroller.

The Comptroller appealed the bankruptcy court's decision.  The district court reversed, finding that the bankruptcy court did not have jurisdiction under 11 U.S.C. § 505(a)(2)(A) to redetermine the tax liability.  Because of its ruling on the jurisdictional issue, the district court did not reach the merits of the Comptroller's tax claim.  Trans State filed a timely notice of appeal from the district court's decision.

### ANALYSIS

The bankruptcy court held that it had jurisdiction to determine the tax liability of Trans State.  A bankruptcy court's conclusions of law are reviewed de novo.  *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993).

A bankruptcy court's power to determine tax liability is set forth in 11 U.S.C. § 505(a) which provides in pertinent part:

§ 505. Determination of tax liability

(a)(1)    Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously

4

assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) **The court may not so determine**--

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and **adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title** . . . .

11 U.S.C. § 505(a)(emphasis added). Although § 505(a)(1) gives the bankruptcy court power to decide the amount or legality of most taxes, this grant of authority is limited by § 505(a)(2)(A). The key to resolving the jurisdictional issue is hinged upon the determination of whether the Comptroller's administrative hearing process was an adjudication "by a judicial or administrative tribunal of competent jurisdiction" prior to the filing of the bankruptcy petition. If it was such an adjudication, the bankruptcy court did not have jurisdiction to redetermine Trans State's tax liability under § 505(a)(2)(A).

The Texas Administrative Code sets out the rules governing taxpayers' disputes over the amount of taxes assessed by the Comptroller. 34 Tex. Admin. Code § 1.1 *et seq.* Section 1.3 provides that contested cases are within the jurisdiction of administrative law judges. The taxpayer may request a hearing, and if the taxpayer makes such a request, the administrative law judge is authorized to conduct a hearing, examine witnesses, rule on evidence, and propose decisions to the Comptroller of Public Accounts. 34 Tex. Admin. Code § 1.7.

The conduct of the hearing is governed by § 1.21 of the

5

Administrative Code. The rules of evidence promulgated by the Texas Supreme Court apply. Any party may request the assigned administrative law judge to subpoena witnesses or require document production, or the judge may do so independently. The witnesses testify under oath, and all contested cases heard by an administrative law judge are recorded. 34 Tex. Admin. Code § 1.21.

The assigned administrative law judge prepares a proposed decision to which the parties may file exceptions. Before the proposed decision is given effect, it must be approved by the Comptroller. 34 Tex. Admin. Code § 1.28. A motion for rehearing may be filed within twenty days; otherwise, the Comptroller's decision becomes final. The taxpayer may appeal this decision by filing suit in state district court if the taxpayer has first paid the tax under protest. Tex. Tax Code Ann. § 112.052 (Vernon Supp. 1998). The trial of the issues is de novo. Tex. Tax Code Ann. § 112.054.

Trans State argues that the Comptroller's decision does not amount to an adjudication under § 505(a)(2)(A) and, thus according to Trans State, the bankruptcy court had jurisdiction to determine its sales tax liability. Trans State maintains that the Comptroller's decision was nothing more than an assessment and could hardly be considered an adjudication by a judicial or administrative tribunal. Trans State emphasizes that the administrative judge merely provided the Comptroller with proposed findings and conclusions and a recommendation; the Comptroller was not bound by the administrative judge's decision. According to

6

Trans State, the Comptroller is an interested party, and is no more an administrative or judicial tribunal than is the Internal Revenue Service.

Trans State cites only one case in support, *In re Washington Manufacturing Co.*, 120 B.R. 918 (Bankr. M.D. Tenn. 1990). In that case, real property had been assessed by the County Board of Equalization in 1985 pursuant to a debtor's prepetition request. The debtor failed to timely appeal the County Board's decision in 1985, and the bankruptcy court concluded that it was without authority to determine the amount of the debtor's tax liability pursuant to § 505(a)(2)(A) for the 1985 year. The bankruptcy court adopted the commonly accepted rule that it was authorized "to determine the amount of the debtors' tax liability unless that liability was finally determined via both a contest before and an adjudication by a judicial or administrative tribunal prior to commencement of the debtors' bankruptcy case." *Id.* at 919. However, the bankruptcy court did conclude that it had authority to determine the debtor's 1988 tax liability because the City and County's reassessment of the 1988 tax liability was not made prior to commencement of the bankruptcy case.

*Washington Manufacturing* appears to support the Comptroller's position, not that of Trans State. What is emphasized in *Washington Manufacturing* is that timing is of utmost importance. If the tax liability is determined by the state **prepetition** through an adjudicative system, the bankruptcy court is without jurisdiction to redetermine the tax liability.

7

In the case *sub judice*, the district court concluded that the proceeding before the administrative judge was quasi-judicial, and therefore amounted to an adjudication by an "administrative or judicial tribunal" under § 505(a)(2)(A) of the Bankruptcy Code. The district court reasoned that the proceeding was adversarial before a tribunal of competent jurisdiction. We agree. Trans State was afforded the opportunity to subpoena and call witnesses to testify at a contested hearing wherein the rules of evidence would be applied. Trans State also had the opportunity to appeal the Comptroller's decision in state district court for *de novo* review once paying the tax under protest. *See* Tex. Tax Code Ann. § 112.052 (Vernon Supp. 1998); Tex. Tax Code Ann. § 112.054. Moreover, Trans State could have filed for bankruptcy before the decision of the Comptroller became final and had his tax liability determined by the bankruptcy court. *See* 11 U.S.C. § 505(a)(1).

Other courts facing similar circumstances have held that the bankruptcy court was without jurisdiction to determine tax liability once the matter had been adjudicated by a quasi-judicial tribunal. *See United States v. Utah Construction & Mining* Co., 384 U.S. 394 (1966)(holding that an administrative board's determinations were final and conclusive, having provided the parties with a full and fair opportunity to litigate with respect to all claims as to which the board had jurisdiction and an opportunity to seek court review of any adverse findings); Arkansas *Corp. Commission v. Thompson*, 313 U.S. 132 (1941)(holding that Arkansas Corporation Commission's determination of tax liability

8

which was not appealed in state court became a final decision and could not be relitigated in bankruptcy court as the Commission had full power to summon witnesses and hear evidence and state statute provided the right to appeal in state court); *City Vending of Muskogee v. Oklahoma Tax Commission*, 898 F.2d 122 (10th Cir.), *cert. denied*, 498 U.S. 823 (1990)(holding that the bankruptcy court lacked jurisdiction to determine whether sale of cigarettes to Indian tribes was exempt from the state cigarette tax under the Commerce Clause because Oklahoma Tax Commission determined it lacked authority to hear constitutional claims, and taxpayer failed to appeal this determination to the Oklahoma Supreme Court); *City of Amarillo v. Eakens*, 399 F.2d 541 (5th Cir. 1968), *cert. denied*, 393 U.S. 1051 (1969)(referee was precluded from redetermining the property valuation for tax purposes because it previously had been adjudicated before the Potter County Board of Equalization and taxpayer failed to seek judicial review); *In re El Tropicano, Inc.* 128 B.R. 153 (Bankr. W.D. Tex. 1991) (holding that Bexar County Appraisal District was an administrative or judicial tribunal of competent jurisdiction as the taxpayer had the opportunity to appear, offer evidence, and appeal the Appraisal District's decision; thus the bankruptcy court did not have jurisdiction over tax liability redetermination under § 505(a)(2)(A)).

The district court further emphasized that the purpose behind section 505 of the bankruptcy code is to protect the estate from the potential loss incurred because of a debtor's failure, due either to financial inability or mere indifference, to contest

potentially incorrect assessments.  In this case the purposes underlying section 505 would not be served by allowing Trans State to relitigate in a federal forum.  *See In re Northwest Beverage, Inc.*, 46 B.R. 631, 635 (Bankr. N.D. Ill. 1985).

For the reasons assigned by the district court, we agree that the bankruptcy court was without jurisdiction to redetermine the tax liability of Trans State under § 505(a)(2)(A).  Accordingly, the judgment of the district court reversing the bankruptcy court is AFFIRMED.

AFFIRMED.