# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTRAL VALLEY AG ENTERPRISES,
*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

No. 05-16177

D.C. No.
CV-03-06366-AWI
(SMS)

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted
March 13, 2007—San Francisco, California

Filed June 25, 2008

Before: Melvin Brunetti, William A. Fletcher, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Brunetti

**COUNSEL**

Scott M. Reddie, Hilton A. Ryder and Todd W. Baxter, McCormick, Barstow, Sheppard, Wayte & Carruth LLP, Fresno, California; and Myron L. Frans and Walter A. Pick-hardt, Faegre & Benson LLP, Minneapolis, Minnesota, for the plaintiff-appellant.

Thomas J. Clark, Gilbert S. Rothenberg and Michelle B. O'Connor, Tax Division, U.S. Department of Justice, Washington, D.C., for the defendant-appellee.

**OPINION**

BRUNETTI, Circuit Judge:

This bankruptcy appeal involves the intersection of 11 U.S.C. § 505(a) of the Bankruptcy Code, which generally authorizes bankruptcy courts to redetermine a debtor's tax liability, and the Tax Equity And Fiscal Responsibility Act of 1982 ("TEFRA"), which provides that the tax treatment of partnership items ordinarily must be determined at the partnership level. After Chapter 11 debtor Central Valley Ag Enterprises filed an objection to the Government's $13.1 million tax claim in its bankruptcy proceeding, the district court dismissed the action on the basis that the statutory res judicata provision in 11 U.S.C. § 505(a)(2)(A) deprives it of subject matter jurisdiction to review the tax treatment of any partnership item that has been administratively determined by the

Internal Revenue Service and has become final pursuant to TEFRA. We disagree with that determination and additionally hold that 11 U.S.C. § 505(a)(1) grants the district court subject matter jurisdiction to review the tax treatment of Central Valley's partnership items, notwithstanding TEFRA.

## I

In 1991, Central Valley's wholly owned subsidiary, Orange Coast Enterprises, acquired a 98 percent partnership share in Astropar Leasing Partnership. Although Central Valley is not a direct partner in Astropar, for TEFRA purposes Central Valley qualifies as an "indirect partner" by virtue of its ownership of Orange Coast, which is a direct partner in Astropar and a "pass-thru partner" in relation to its owner, Central Valley. *See* I.R.C. § 6231(a)(2), (9), (10). The only other partner in Astropar holding the remaining two percent share is a partnership called STM-CIG.

The owners of STM-CIG are the promoter and the officers of the promoter of a lease-stripping tax shelter,[1] in which Astropar participated. As a result of its lease-stripping arrangements, Astropar reported significant losses on its partnership tax returns for 1993, 1994 and 1995. Because partnerships are not taxed, 98 percent of Astropar's reported losses passed to Orange Coast and then to Central Valley, thereby decreasing its reported tax liability. The losses were eventually disallowed, however, after the IRS determined that there was no economic substance to the tax shelter. Central Valley was accordingly left with a tax deficiency.

The IRS made its adjustments to Astropar's returns in 1996 and 1998. In 1998, Orange Coast and STM-CIG, as the Astro-

---

[1]The IRS defines "lease strips" as "transactions in which one participant claims to realize rental or other income from property and another participant claims the deductions related to that income (for example, depreciation or rental expenses)." I.R.S. Notice 2003-55, 2003-2 C.B. 395.

par partners, filed protests on Astropar's behalf regarding the tax years 1993 and 1994, and SMT-CIG filed another protest regarding the tax year 1995. The protests led to a conference with the IRS Appeals Office, with Central Valley participating through the Astropar partners. Despite the Appeals Office's name, such conferences are informal and more closely resemble alternative dispute resolution than an administrative hearing. *See* Treas. Reg. § 601.106(c). After the conference failed to produce a settlement, the IRS Appeals Office sustained in full the IRS's proposed adjustments to Astropar's tax returns. The IRS mailed the Notice of Final Partnership Administrative Adjustment ("FPAA") on March 28, 2001.

Under TEFRA, the Astropar partners then had 150 days to file a petition for a readjustment in either the Tax Court, a district court, or the Court of Federal Claims. I.R.C. § 6226(a), (b)(1). If any partner did so, all partners would have been deemed parties to the action. *Id.* § 6226(c). None of the partners filed such a petition, however.

Instead, on December 3, 2001, 250 days after the FPAA issued (or 100 days after the TEFRA readjustment period expired), Central Valley filed a voluntary Chapter 11 bankruptcy petition. The bankruptcy estate included approximately $7.68 million in assets and $7.99 million in liabilities, $7.89 million of which were unsecured, nonpriority claims. In the bankruptcy court, the Government filed an unsecured priority claim for the tax years 1993, 1994 and 1995, totaling $13.1 million — more than all the assets in the estate. Central Valley responded by filing the underlying objection to the tax claim.

On the Government's motion, the district court withdrew the reference, transferring jurisdiction over Central Valley's objection from the bankruptcy court to the district court. The Government then moved for summary judgment, contending that the time to contest the FPAA under TEFRA had elapsed prior to commencement of the bankruptcy case and that, con-

sequently, the district court lacked subject matter jurisdiction to consider the partnership items, which were final under TEFRA. As to 11 U.S.C. § 505 of the Bankruptcy Code, which ordinarily provides for jurisdiction to redetermine a debtor's tax items, the Government conceded that the statutory res judicata provision of subsection (a)(2)(A) was inapplicable because "the default of the FPAA was not 'contested' before an 'administrative tribunal' and so the tax determination of the debtor does not fall within the exclusionary language of Section 505(a)(2)(A)." Nevertheless, the Government contended that subsection (a)(1) did not grant jurisdiction in the first place because the limitations period on readjustments under TEFRA, I.R.C. § 6226, had expired and therefore the IRS's determinations regarding the partnership items pursuant to TEFRA were final and binding.

Treating the Government's motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court granted the dismissal. In doing so, however, the court rejected both parties' readings of TEFRA and the Bankruptcy Code. Notwithstanding the Government's concession to the contrary, the district court ruled that the mere "opportunity" for court review under TEFRA brought the IRS's adjustment determinations within the statutory res judicata provision of 11 U.S.C. § 505(a)(2)(A). Consequently, the court dismissed Central Valley's objection to the tax claim for lack of subject matter jurisdiction, deemed the IRS's determination of the partnership items incontestible within the context of the bankruptcy proceedings, and "vacated" its order withdrawing the reference, thereby returning the matter to the bankruptcy court.

We have jurisdiction under 28 U.S.C. § 1291 and review *de novo* the district court's dismissal for lack of subject matter jurisdiction. *Am. Principals Leasing Corp. v. United States*, 904 F.2d 477, 480 (9th Cir. 1990).

## II

**[1]** We begin with the language of the governing statute. Section 505(a) of the Bankruptcy Code provides:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>
> (2) The court may not so determine—(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; . . . .

11 U.S.C. § 505(a). The statute is "jurisdictional" insofar as it "confers on the bankruptcy court authority to determine certain tax claims" or deprives it of that authority. *In re Custom Distribution Servs. Inc.*, 224 F.3d 235, 239-40 (3d Cir. 2000); *accord Bunyan v. United States (In re Bunyan)*, 354 F.3d 1149, 1151 (9th Cir. 2004).

**[2]** Section 505(a) is also a statutory embodiment of traditional principles of res judicata. *Mantz v. Cal. State Bd. of Equalization (In re Mantz)*, 343 F.3d 1207, 1213-14 (9th Cir. 2003). If a tax claim has been litigated to a final judgment prior to the commencement of the bankruptcy case, the bankruptcy court lacks jurisdiction to consider the claim. *See, e.g.*, *Baker v. IRS (In re Baker)*, 74 F.3d 906, 909 (9th Cir. 1996) (per curiam) (stipulated judgment in Tax Court after petition and answer). Otherwise, the court has jurisdiction notwithstanding a default judgment or a taxpayer's failure to timely pursue its remedies under the applicable tax laws, which

would ordinarily (*i.e.*, outside of bankruptcy) prohibit redetermination of the tax assessment. *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*, 898 F.2d 122, 124 (10th Cir. 1990).

One of the purposes of § 505, and in particular the purpose of the requirement that the tax matter be "contested," is to "protect[ ] a debtor from being bound by a pre-bankruptcy tax liability determination that, because of a lack of financial resources, he or she was unable to contest." *Mantz*, 343 F.3d at 1211. And correspondingly, § 505 protects a debtor's creditors "from the dissipation of an estate's assets in the event that the debtor failed to contest the legality and amount of taxes assessed against it." *New Haven Projects LLC v. City of New Haven (In re New Haven Projects LLC)*, 225 F.3d 283, 288 (2d Cir. 2000) (internal quotation marks omitted). Such protections are particularly relevant in the instant case, as the Government's tax claim far exceeds Central Valley's assets and has priority over nearly all of its other liabilities, which predominantly consist of unsecured, nonpriority claims.

Not surprisingly, the federal tax laws complicate this picture. Under the Internal Revenue Code, partnerships are not taxable entities; they pay no federal income taxes and file only informational returns. I.R.C. §§ 701, 6031. Instead, the individual partners are separately or individually liable for income taxes on their distributive share of partnership items. *Id.* §§ 701, 702. Accordingly, prior to the enactment of TEFRA in 1982, Pub L. No. 97-248, 96 Stat. 324, "adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners." *Randell v. United States*, 64 F.3d 101, 103 (2d Cir. 1995).

**[3]** TEFRA did not change the taxation of partners and partnerships; rather, it changed only the procedures for determining the appropriate tax treatment of partnership items. Under TEFRA, "the tax treatment of any partnership item

(and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." I.R.C. § 6221. Accordingly, each partner's individual income tax return ordinarily must be consistent with the partnership's informational return. *Id.* § 6222(a). Inconsistent treatment, if unwarranted, may result in a "computational adjustment," defined as a "change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item." *Id.* § 6231(a)(6).

If the IRS issues an FPAA making adjustments to a partnership's taxable items, as it did in this case, the individual partners may contest the FPAA by filing a petition for readjustment with either the Tax Court, a federal district court, or the Court of Federal Claims.[2] *Id.* § 6226(a). The limitations period for filing such a petition is 150 days from the mailing of the FPAA—*i.e.*, 90 days for the tax matters partner, then 60 days for any notice partner or five-percent group. *Id.* § 6226(a), (b)(1). But notwithstanding the fact that "partnership items" are to be determined at the "partnership level" under TEFRA, *id.* § 6221, the partnership is not a party to the action; the individual partners are. *See 1983 W. Reserve Oil & Gas Co. v. Comm'r*, 95 T.C. 51, 59 (1990), *aff'd*, 995 F.2d 235 (9th Cir. 1993) (table). Only the partners are authorized to file the petition for readjustment, and once it is filed all the partners are ordinarily treated as parties to the action. *See* I.R.C. § 6226(a)-(c).

**[4]** TEFRA has been construed as generally requiring "that all challenges to adjustments of partnership items be made in a single, unified agency proceeding." *Kaplan v. United States*, 133 F.3d 469, 473 (7th Cir. 1998) (dismissing a refund action under I.R.C. § 7422(h)). Generally, once "the partnership item has been resolved at the partnership level [it] cannot be con-

---

[2]For ease of reference to all three courts, we will refer to an action under § 6226 as a "Tax Court" case.

tested at the individual partner level." *Randell*, 64 F.3d at 104 (dismissing a claim for injunctive relief under the Anti-Injunction Act, I.R.C. § 7421(a)). However, each of these cases involved an Internal Revenue Code section that expressly barred the specific type of claim in question, and none involved bankruptcy proceedings.

The pre-TEFRA treatment of partnership items at the individual partners' level presented no obstacle to a bankruptcy court's jurisdiction under 11 U.S.C. § 505 to redetermine partnership items in determining a partner-debtor's tax liability. Partnerships presented jurisdictional problems only regarding the non-debtor partners that sought to have their tax liability determined by the bankruptcy court along with the partner-debtor's. Bankruptcy jurisdiction was held not to extend to such non-debtor partners because § 505 applied only to the tax liability of the debtor. *Am. Principals*, 904 F.2d at 481 (considering pre-TEFRA tax years). There was no partnership-related jurisdictional limitation as to the partner-debtor, however. In fact, this court expressly recognized that the determination of the tax liability of a partner-debtor for purposes of resolving an IRS tax claim "would require a determination of the tax consequences of the partnerships' activities." *Id.* In other words, bankruptcy courts had jurisdiction to redetermine the tax treatment of partnership items.

After the enactment of TEFRA, this jurisdictional law did not change. We continued to follow the rule of *American Principals* that bankruptcy courts have jurisdiction over the tax liability of a debtor-partner but lack such jurisdiction over any non-debtor partners. *See Third Dividend/Dardanos Assocs. v. Comm'r*, 88 F.3d 821, 823 (9th Cir. 1996). However, combining that rule with TEFRA created problems in Tax Court cases involving partnerships. Because all partners are deemed parties to a Tax Court proceeding pursuant to I.R.C. § 6226(c), a debtor-partner would be a party to that proceeding in addition to a bankruptcy proceeding. Consequently, the Tax Court case was subject to the automatic stay

under 11 U.S.C. § 362(a)(8), which stayed the Tax Court case not only as to the debtor-partner but as to all other partners as well. Thus, " 'the stay imposed by the bankruptcy petition would halt the commencement or continuation of the partnership proceeding, and would prevent the IRS and the remaining partners from litigating whether any adjustments were appropriate to the partnership return.' " *Katz v. Comm'r*, 335 F.3d 1121, 1127 (10th Cir. 2003) (quoting the Commissioner).

**[5]** To avoid this result, Treasury Regulation § 301.6231(c)-7T was issued to sever the debtor-partner from the Tax Court case by deeming any "partnership items" of the debtor-partner to be "nonpartnership items" not subject to TEFRA. *See* I.R.C. § 6231(a)(3)-(4), (c)(2); Treas. Reg. § 301.6231(c)-7T.[3] Those same items remain "partnership items" as to the remaining non-debtor partners in the Tax Court case, however. The effect of this redefinition is two separate proceedings—one in bankruptcy court involving the debtor-partner, and one in Tax Court involving the remaining partners—regarding the same partnership items.

The case before us is quite similar to the scenario described above insofar as Central Valley has sought to litigate the Astropar partnership items in a bankruptcy proceeding, leaving its non-debtor Astropar partner, STM-CIG, to separately litigate the same partnership items in Tax Court. There is just one major twist in this case: none of the Astropar partners timely pursued their TEFRA remedies by filing a petition for readjustment in Tax Court (or any other qualifying court) within the 150-day TEFRA limitations period. Nor did Central Valley file for bankruptcy within that limitations period. Instead, Central Valley filed its voluntary Chapter 11 petition 100 days after the TEFRA limitations period had expired and

---

[3]The "T" signifies a temporary regulation. The identical regulation later became permanent, *see* Treas. Reg. § 301.6231(c)-7, but not until after the tax years at issue in this case.

the IRS's determinations of the Astropar partnership items became final for TEFRA purposes.

### III

**[6]** The district court concluded that the IRS Appeals Office's issuance of an FPAA, the opportunity for judicial review through the filing of a petition for readjustment in Tax Court, and the fact that the FPAA became final when no partner sought such review within TEFRA's limitations period, satisfy the statutory res judicata provision in 11 U.S.C. § 505(a)(2)(A). We disagree. A conference with and the issuance of an FPAA by the IRS Appeals Office do not satisfy the statutory requirements that a tax matter be "contested before and adjudicated by a judicial or administrative tribunal" within the meaning of the statute.

**[7]** The district court erred in concluding that the mere opportunity for judicial review under TEFRA is sufficient to satisfy the statute and that it is immaterial whether or not a party chooses not to avail itself of that opportunity by filing a petition for readjustment in Tax Court. Section 505(a)(2)(A) requires that a matter be *actually* contested and adjudicated before it is entitled to preclusive effect in a bankruptcy proceeding. *See Tapp v. Fairbanks N. Star Borough (In re Tapp)*, 16 B.R. 315, 318-20 (Bankr. D. Alaska 1981) ("Congress did not intend a default judgment to preclude the bankruptcy court's determination of the amount and validity of State taxes and penalties.").

**[8]** According to the definitions we have previously adopted, a tax matter is "contested" for purposes of § 505(a)(2)(A) "if, prior to the bankruptcy filing, the debtor had filed a petition in the Tax Court and the IRS had filed an answer." *Baker*, 74 F.3d at 909; *accord IRS v. Teal (In re Teal)*, 16 F.3d 619, 621 & n.4 (5th Cir. 1994) (quoting the legislative history). "A matter is adjudicated when a judgment of a court of competent jurisdiction has been decreed," mean-

ing that a tax matter is adjudicated when the Tax Court enters its judgment. *Baker*, 74 F.3d at 909 (internal quotation marks and citation omitted). Accordingly, as none of Astropar's partners ever filed a petition for readjustment in Tax Court, the tax treatment of its partnership items has never been contested or adjudicated within the meaning of § 505(a)(2)(A).

**[9]** It is immaterial that the Astropar partners filed protests with the IRS, participated in a conference with the IRS Appeals Office, and received an FPAA. Despite the division's name, proceedings before the IRS Appeals Office more closely resemble a settlement conference than a hearing before an administrative tribunal. The governing regulations refer to the proceedings as a "conference" rather than a "hearing," describe them as "informal," and focus on the "settlement" of disputes and the "settlement authority" of the Appeals Officers. Treas. Reg. § 601.106(c), (d); *see also id.* § 601.106(a)(1)(iii) (providing for how a taxpayer may "request Appeals consideration"). The Internal Revenue Manual likewise describes the Appeals Office as the IRS's "dispute resolution forum" with the "authority to consider and negotiate settlements," I.R.M. 8.1.1.2, and provides that its mission is "to resolve tax controversies, without litigation," I.R.M. 8.1.1.1. Accordingly, the Appeals Officer or Settlement Officer does not act as a fact-finder or preside over adversarial proceedings in the model of an administrative law judge. In cases not docketed in the Tax Court, the district director for the IRS is not even represented in conferences with the Appeals Office unless the Appeals Officer and the district director deem it advisable. *See* Treas. Reg. § 601.106(c). There are no provisions for taxpayer discovery or for witnesses to be subpoenaed, testimony under oath is not taken (although affidavits may be required), and there are no provisions requiring that the proceedings be recorded or that any particular evidentiary rules be followed.

As the Government commendably concedes, Appeals Office conferences are materially different than the proceed-

ings that were determined by the Fifth Circuit to satisfy § 505(a)(2)(A) in *Texas Comptroller of Public Accounts v. Trans State Outdoor Advertising Co. (In re Trans State Outdoor Advertising Co.)*, 140 F.3d 618 (5th Cir. 1998). In that case, the taxpayer received a formal hearing presided over by an administrative law judge, who was authorized by the Texas Administrative Code to examine witnesses, rule on evidence, and propose a decision to the Comptroller. *Id.* at 620-21. The rules of evidence promulgated by the Texas Supreme Court apply to such hearings, witnesses and documents can be subpoenaed, witnesses testify under oath, and the hearings are recorded. *Id.* at 621. Thus, the Fifth Circuit determined that "the proceeding before the administrative judge was quasi-judicial and therefore amounted to an adjudication by an 'administrative or judicial tribunal' under § 505(a)(2)(A)." *Id.*

**[10]** Because the same cannot be said of conferences with the IRS Appeals Office, and the IRS's tax treatment of Central Valley's partnership items was never contested before and adjudicated by the Tax Court or any other tribunal of competent jurisdiction, we conclude that 11 U.S.C. § 505(a)(2)(A) does not deprive the district court of subject matter jurisdiction over Central Valley's objection to the Government's tax claim.

## IV

**[11]** The Government nevertheless contends that the dismissal for lack of subject matter jurisdiction may be affirmed on an alternative ground. Putting aside the jurisdiction stripping provision of § 505(a)(2)(A), the Government argues that the jurisdiction granting provision of § 505(a)(1) does not extend to Central Valley's partnership items in the first place. We disagree.

The Bankruptcy Code broadly authorizes the district court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not

previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). In *American Principals*, 904 F.2d at 481, we recognized that § 505 authorizes district courts to exercise bankruptcy jurisdiction to determine the tax consequences of partnership activities with respect to a debtor-partner's tax liability for pre-TEFRA taxable years. We held that district courts lack bankruptcy jurisdiction over the tax treatment of partnership items only with regard to any non-debtor partners. *Id.* at 481-82. And in *Third Dividend*, 88 F.3d at 823, we determined that the rule of *American Principals* is also applicable to post-TEFRA taxable years. Accordingly, we held that despite the bankruptcy court's exercise of jurisdiction over a debtor-partner's partnership items (which were converted to non-partnership items pursuant to TEFRA and corresponding regulations because of the bankruptcy filing), the bankruptcy court lacked jurisdiction over the non-debtor partners' tax liability as to the same partnership items. *Id.* at 822, 823. Indeed, we so held even though the non-debtor partners were the sole owners of the debtor-partner and therefore had pass-thru liability as to the partnership items in question. *Id.* at 822.

Despite these precedents, however, the Government contends that we should read § 505(a)(1) as applying only to a debtor's ultimate "tax liability" and not to "partnership items," which TEFRA now requires to "be determined at the partnership level." I.R.C. § 6221. Under the Government's conception, the bankruptcy court would have jurisdiction to determine Central Valley's bottom-line tax liability, but in doing so the court would be required to accept as conclusive the partnership-level adjustments determined by the IRS. Essentially, that line item would be beyond review.

**A**

We reject the Government's proposed distinction between "tax liability" and "partnership items" for purposes of apply-

ing § 505(a)(1). The statute is not limited to "tax liability" and makes no such distinction. Even if Central Valley's bottom-line tax liability is the ultimate concern with respect to the Government's tax claim, as a means to that end § 505(a)(1) authorizes the district court to determine "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax." 11 U.S.C. § 505(a)(1).

Rather than distinguish partnership items from a partner's tax liability, the decisions of this court as well as the Tax Court have treated the two as interrelated and inseparable for jurisdictional purposes. As a partnership's activities have tax consequences only for the partners, the existence or lack of jurisdiction over a partner's tax liability corresponds to the existence or lack of jurisdiction over any partnership items affecting that tax liability.

In *American Principals*, for example, we considered a district court's bankruptcy jurisdiction under § 505 to determine the tax consequences for a debtor-partner and various non-debtor partners from the activities of twenty-four partnerships, which were also debtors in the bankruptcy proceeding. 904 F.2d at 480. The district court dismissed for lack of bankruptcy jurisdiction as to all except the debtor-partner, and we affirmed. As to the non-debtor partners, we reasoned that because § 505 does not extend bankruptcy jurisdiction to parties other than the debtor, the statute does not permit a bankruptcy court to determine either the tax liabilities of non-debtor partners or the tax consequences for them of the debtor-partnerships' activities. *Id.* at 481. Rejecting the non-debtor partners' attempt to piggyback on the partnerships' debtor status, we reasoned that because partnerships as non-taxable entities have no tax liability and § 505 extends only to debtors with tax liability, the statute cannot be read to authorize bankruptcy courts to determine the tax consequences for third parties of the debtor partnerships' activities. *Id.*

As to the lone debtor-partner, by contrast, the same reason-ing led to the opposite result. Section 505 authorized the dis-trict court to exercise bankruptcy jurisdiction to determine both the tax liability of the debtor partner and, as a necessary component of that liability, the tax consequences of the part-nerships' activities. We stated: "[T]he district court has bank-ruptcy jurisdiction to determine the tax liability of the debtor APLC and . . . since APLC is a partner in each of the partner-ships such a determination would require a determination of the tax consequences of the partnerships' activities." *Id.*

Although *American Principals* concerned pre-TEFRA tax years, the enactment of TEFRA made no changes to the legal principles underlying our decision. Indeed, TEFRA's own language reaffirms the fundamental interrelatedness between partnership items and a partner's tax liability. For example, consistent with the fact that only the partners are liable for taxes on a partnership's activities, under TEFRA the only par-ties to a Tax Court proceeding are the partners, not the part-nership. *See* I.R.C. § 6226(a), (c). And just as tax liability on partnership items is automatically passed through to the part-ners, TEFRA provides that the adjustment of a partnership item results in a "computational adjustment," which is "the change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item." I.R.C. § 6231(a)(6). TEFRA even defines a "partner" as a "person whose income tax liability . . . is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." I.R.C. § 6231(a)(2)(B).

We are not the first to recognize this consistency between pre- and post-TEFRA law and the continuing validity of our reasoning in *American Principals*. In *1983 Western Reserve Oil & Gas Co. v. Comm'r*, 95 T.C. 51, 57 (1990), *aff'd*, 995 F.2d 235 (9th Cir. 1993) (table), the Tax Court employed sim-ilar reasoning to decide that a debtor-partnership's bankruptcy filing did not automatically stay a partnership proceeding in Tax Court involving adjustments to the partnership's tax

return and the corresponding tax liabilities of the non-debtor partners. The court explained:

> [A] partnership proceeding in the Tax Court . . . ultimately affects only the tax liability of individual partners. The purpose of a partnership proceeding in the Tax Court is to redetermine the adjustments to a partnership's return determined in an FPAA. Ultimately, however, it is the tax liability of the individual partners which is affected by the redetermination of the adjustments to the return of the partnership. To argue that the partnership proceeding requires the Tax Court to make determinations with respect to the items of income, gain, loss, or credit of the partnership, rather than the individual partners, and that a partnership proceeding involving a bankrupt partnership thus 'concerns' the partnership, not the partners, is to exalt form over substance.

*Id.* Accordingly, in comparing and contrasting our decision in *American Principals*, the Tax Court expressly dispelled the notion that TEFRA had altered the legal principles underlying that decision. The court explained that even though TEFRA "has changed the process by which partnership adjustments are reviewed," the taxation of partnership items and the tax liability of individual partners remain fundamentally interrelated. Both before and after TEFRA, "the starting point in determining a deficiency against an individual partner [is] the examination of the partnership return." *Id.* at 58-59.

Not long thereafter, we expressly adopted the Tax Court's reasoning in *Third Dividend/Dardanos Assocs. v. Comm'r*, 88 F.3d 821, 823 (9th Cir. 1996) (quoting *1983 Western*, 95 T.C. at 57). We added:

> While TEFRA elevates the assessment of partnership items to the entity level, the partners whose tax liabilities are "affected by the outcome of a partnership

> proceeding continue to be the real parties in interest in any partnership audit or litigation proceeding." The main concern of the unified post-TEFRA tax assessment proceeding is to aggregate the partners for a uniform assessment of tax liability, not to transform the partnership itself into the main interested party.

*Id.* (quoting *Chef's Choice Produce, Ltd. v. Comm'r*, 95 T.C. 388, 396 (1990)).

Thus, rather than distinguish a partner's tax liability from its partnership items, we have consistently treated them as fundamentally interrelated and inseparable in considering the proper forum for a partner's tax dispute. Accordingly, we reject the Government's proposed distinction and continue to read § 505 of the Bankruptcy Code as extending bankruptcy jurisdiction not only to the ultimate tax liability of a debtor partner but also to any partnership items affecting that liability.

**B**

**[12]** The Government alternatively asserts that even if the Bankruptcy Code can be read to provide for bankruptcy jurisdiction over partnership items, we should read TEFRA's provision that "the tax treatment of any partnership item . . . shall be determined at the partnership level," I.R.C. § 6221, as a later-enacted limitation on bankruptcy jurisdiction. In the Government's view, § 6221 of TEFRA effectively overrides § 505 of the Bankruptcy Code and therefore generally precludes the exercise of bankruptcy jurisdiction over partnership items except as TEFRA may otherwise allow. We disagree.

Nothing in TEFRA speaks to the jurisdiction of the bankruptcy courts, and we decline to read TEFRA's "partnership level" provision as impliedly overriding the Bankruptcy Code's broad jurisdictional provisions. In *Third Dividend*, a

post-TEFRA case, the only partner that filed for bankruptcy was Dividend Development Corporation (DDC), yet it was undisputed that the bankruptcy court had jurisdiction over DDC's partnership items. 88 F.3d at 821-22. The only question was whether that jurisdiction also extended to DDC's shareholders, who incurred pass-thru liability as to the same partnership items because DDC was an S corporation. *Id.* at 822. We distinguished DDC from its shareholders for jurisdictional purposes on the sole basis that DDC had filed for bankruptcy and its shareholders had not. *Id.* at 823.

The Government would have us read cases like *Third Dividend* differently. It maintains that the exercise of bankruptcy jurisdiction over partnership items is still possible after TEFRA only because the Secretary of the Treasury issued Treasury Regulation § 301.6231(c)-7T as an exception to TEFRA's general limitation on bankruptcy jurisdiction. The regulation provides that the partnership items "shall be treated as nonpartnership items" with respect to any partner who is named as a debtor in a bankruptcy proceeding. Treas. Reg. § 301.6231(c)-7T(a). It was evidently that regulation to which we were referring in *Third Dividend* when we stated that "DDC . . . was no longer a party to tax assessment administrative proceedings because its partnership items had converted to nonpartnership items under § 6231 and the corresponding temporary Treasury regulations." 88 F.3d at 822. Unlike the debtor in *Third Dividend*, however, Central Valley cannot avail itself of § 301.6231(c)-7T because a companion regulation provides that the regulations shall not apply where the time period for contesting the FPAA under TEFRA has expired. *See* Treas. Reg. § 301.6231(c)-3T.

The problem with the Government's argument is that it misapprehends the purpose, and thus the relevance, of § 301.6231(c)-7T. The regulation has nothing to do with preventing TEFRA from divesting bankruptcy courts of jurisdiction they would otherwise possess under the Bankruptcy Code. Quite the opposite, its express purpose is to prevent

bankruptcy proceedings from interfering with the operation of TEFRA. *See* Treas. Reg. § 301.6231(c)-7T(a) ("The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws."); *see also* I.R.C. § 6231(c)(2). And it does so by divesting the Tax Court of jurisdiction over a debtor-partner and its partnership items. *See, e.g.*, *Third Dividend*, 88 F.3d at 822; *First Blood Assocs. v. Comm'r*, 75 T.C.M. (CCH) 2138 (1998); *Computer Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 202 (1987) (debtor barred from commencing a Tax Court action after filing for bankruptcy).

Treasury Regulation § 301.6231(c)-7T was specifically designed to avoid the effects of the automatic stay. Because all partners are deemed parties to a TEFRA partnership proceeding, the filing of a bankruptcy petition by any partner would automatically stay the commencement or continuation of any such proceeding. 11 U.S.C. § 362(a)(8).[4] And because the stay applies to all parties, the Tax Court would be prevented from adjudicating the appropriateness of any adjustments to the partnership return or determining the tax liabilities of any of the partners. *See Katz v. Comm'r*, 335 F.3d 1121, 1127 (10th Cir. 2003) (quoting the Commissioner of Internal Revenue). The purpose of severing the debtor-partner is thus "to prevent the automatic stay . . . from impeding the TEFRA proceeding," *First Blood*, 75 T.C.M. (CCH) 2138, and thereby to "promote[ ] the efficient resolution of disputes between the IRS and the other partners," *Katz*, 335 F.3d at 1127 (paraphrasing the Commissioner). The practical

---

[4]Prior to the 2005 amendments, 11 U.S.C. § 362(a)(8) provided that the filing of a bankruptcy petition operated as a stay, applicable to all entities, of "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." It now applies to any Tax Court proceeding "concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title."

result is separate proceedings in separate courts regarding the same partnership items. The bankruptcy court's jurisdiction over the debtor-partner and its partnership items becomes exclusive, and the Tax Court's jurisdiction over the remaining non-debtor partners and their partnership items is freed of interference from the debtor-partner's bankruptcy proceeding.

The Government is, of course, correct that Treasury Regulation § 301.6231(c)-7T is inapplicable in this case because no partner timely filed a petition for readjustment in Tax Court. Yet, for the very same reason, there is no need for it. Because there is no partnership proceeding that would be automatically stayed by Central Valley's bankruptcy filing, there is no need to sever Central Valley as a party by re-characterizing its partnership items.

By allowing the TEFRA deadline to lapse, Central Valley and the other Astropar partners have actually accomplished what the Treasury Regulations were designed to accomplish in cases where a petition for readjustment has been filed within the deadline—a separation between the debtor-partner and the non-debtor-partners as to the determination of their respective partnership items and tax liabilities. Obviously, this raises an additional issue regarding the possible preclusive effects of Central Valley allowing the TEFRA deadline to lapse before filing its bankruptcy petition (which we address in Part V-C *infra*). But that is a distinct inquiry from the contention that § 6221 of TEFRA implicitly overrides § 505 of the Bankruptcy Code, which we reject.

## C

**[13]** The Government further argues that permitting the exercise of bankruptcy jurisdiction over a debtor's partnership items conflicts with TEFRA's purpose of avoiding inconsistent judicial determinations of partnership matters. But while that purpose is no doubt a valid one, it is not an absolute, as illustrated by the above discussion of Treasury Regulation

§ 301.6231(c)-7T. The very purpose of that regulation is to allow separate proceedings in separate tribunals regarding the same partnership matters. Thus, it cannot be said that TEFRA mandates consistent and therefore unified treatment among all partners in all cases.

No doubt, inequities may arise in some cases as a result of allowing debtor-partners to seek separate determinations of their partnership items in bankruptcy proceedings. But Congress has provided mechanisms for mitigating any inequities that may arise in individual cases. In the first place, bankruptcy provides only a limited exception to TEFRA's general rule. And secondly, if the inequities in any particular case are sufficiently great, the Bankruptcy Code has a built-in remedy: The bankruptcy court may, in its discretion, decline to exercise its authority to redetermine a debtor's tax liabilities. Section 505(a)(1) "is a permissive empowerment—as established by the operative verb 'may.' It is not a mandatory directive. The assumption of the power is discretionary with the Bankruptcy Court." *Mantz*, 343 F.3d at 1215 (internal quotation marks and citation omitted); *accord New Haven Projects*, 225 F.3d at 288-89 (recognizing that § 505 permits abstention in the court's discretion where "uniformity of assessment is of significant importance," among other possible reasons).

In *Mantz*, we held that even though the bankruptcy court was not barred by res judicata from considering the debtor's tax liability, it "may, in the exercise of its discretion, decline to redetermine the [debtor's] tax liability" and may do so "based on some or all of the reasons underlying the res judicata doctrine." 343 F.3d at 1215. If the Government believes that similar reasons justify the district court declining to exercise bankruptcy jurisdiction in this case, it should raise the issue with the district court in the first instance.

## V

**[14]** Thus far we have determined that § 505(a)(1) of the Bankruptcy Code generally provides for bankruptcy jurisdic-

tion over a debtor's tax liability and partnership items, and the res judicata provision in § 505(a)(2)(A) does not preclude the exercise of that jurisdiction in this case. Aside from these Bankruptcy Code provisions, however, the Government argues that TEFRA requires that preclusive effect be given to the IRS's determinations of Central Valley's partnership items. It argues that because no Astropar partner filed a petition for readjustment within TEFRA's limitations period, the IRS's adjustments to Central Valley's partnership items are final and conclusive for TEFRA purposes and therefore unreviewable in any court.

Again, we disagree. Section 505 provides for bankruptcy jurisdiction to redetermine a debtor's tax liabilities notwithstanding the preclusive effects to which a tax judgment might otherwise be entitled. *See* 11 U.S.C. § 505(a)(1) ("whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction"). TEFRA is no exception. Contrary to the Government's suggestion, there is nothing in TEFRA providing that finality for TEFRA purposes renders a tax matter final and binding for all purposes.

## A

The only TEFRA provision cited by the Government that expressly gives preclusive effect to an FPAA issued by the IRS is I.R.C. § 6230(c)(4), which provides that an FPAA "shall be conclusive" as to the treatment of partnership items on the partnership return. Yet that provision is expressly limited to a partner's claim for a refund under the same subsection. It has no application to petitions for readjustment under I.R.C. § 6226 or to tax claims initiated by the Government in bankruptcy proceedings.

Language better supporting the Government's position can be found in *Randell v. United States*, 64 F.3d 101, 108 (2d Cir. 1995), in which the court determined that it was "precluded under TEFRA from examining a partnership item in an

individual partner's proceedings." The court reasoned: "When no valid petition is filed, the tax treatment of partnership items . . . as administratively adjusted by the IRS becomes conclusively established and may not thereafter be contested." *Id.*

But *Randell* had nothing to do with bankruptcy. It was a sovereign immunity case involving an individual partner's attempt to enjoin the IRS from collecting income taxes assessed against him under TEFRA. Because such actions are generally precluded by the Anti-Injunction Act, I.R.C. § 7421(a), the issue was whether an exception in I.R.C. § 6213(a) applied to Randell's action. The Second Circuit held that the exception did not apply because I.R.C. § 6230(a)(1) specifically made § 6213(a) inapplicable to assessments under TEFRA. *Randell*, 61 F.3d at 107. Thus, the Act's general prohibition applied and the Government's sovereign immunity barred Randell's action. *Id.*

This is a far different case. The Second Circuit in *Randell* had no occasion to consider a provision anything like § 505 of the Bankruptcy Code. Nor has the Government cited any Internal Revenue Code section like the Anti-Injunction Act that would expressly bar Central Valley's objection to the Government's tax claim.

The Tax Court's decision in *Genesis Oil & Gas, Ltd. v. Comm'r*, 93 T.C. 562 (1989), is distinguishable for similar reasons. The court held that the failure to timely file a § 6266 petition results in the loss of the partner's "right to contest, in any court, [the IRS's] determination in the FPAA." *Id.* at 565-66. But because *Genesis* was not a bankruptcy case, the court had no occasion to consider whether the Bankruptcy Code might require a different result.

**B**

The Government is certainly correct that TEFRA, as a later-enacted statute, could have provided an exception to the

res judicata provisions of § 505. But in fact, TEFRA contains no provision requiring that preclusive effect be given based on Central Valley's mere failure to timely pursue its Tax Court remedies.

TEFRA does incorporate some principles of res judicata in I.R.C. § 6226; however, none of those provisions apply until a Tax Court action is filed. For example, consistent with the concept of privity, subsection (c) provides that all partners are deemed parties "[i]f an action is brought" in Tax Court. I.R.C. § 6226(c). Also, subsection (h) provides that the dismissal of a § 6226 action is deemed a decision that the FPAA "is correct"; however, again, this subsection is applicable only "[i]f an action [is] brought" in Tax Court. *Id.* § 6226(h).

Contrary to the Government's reading of TEFRA and § 505(a) as conflicting, TEFRA's limited incorporation of claim preclusion is consistent with § 505(a). Both statutes provide for preclusion only after an action has been filed in Tax Court. *See Baker*, 74 F.3d at 909; *Teal*, 16 F.3d at 621 (quoting the legislative history of § 505). Otherwise, there is no conflict. TEFRA contains no provision stating that an FPAA has preclusive effect based solely on the failure to timely pursue TEFRA remedies and notwithstanding the lack of a Tax Court proceeding. And § 505(a) grants preclusive effect only if there has been a proceeding and judgment in Tax Court.

## C

In the absence of any express provisions in TEFRA requiring that preclusive effect be given to the FPAA in this case, if the IRS's adjustments to Astropar's partnership returns are to have any preclusive effect, it must be implied from the statutory limitations period applicable to petitions for readjustment. *See* I.R.C. § 6226(a), (b)(1). The problem with that theory, however, is that § 505(a)(1) of the Bankruptcy Code has consistently been applied to permit a bankruptcy court to

redetermine a debtor's tax liabilities notwithstanding the debtor's failure to timely pursue its tax law remedies, and notwithstanding the fact that such a failure renders the matter final and incontestable in any other court. While finality may "[o]rdinarily" be the rule, bankruptcy proceedings are, in a word, different. *See City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*, 898 F.2d 122, 124 (10th Cir. 1990).

Several courts have held that § 505(a)(1) allows a taxpayer to challenge state or local tax assessments in a bankruptcy proceeding notwithstanding the fact that those assessments have otherwise become final and conclusive under state law by virtue of the taxpayer's failure to timely pursue its state remedies. *See, e.g.*, *In re Hospitality Ventures/Lavista*, 314 B.R. 843, 846 (Bankr. N.D. Ga. 2004); *Cumberland Farms, Inc. v. Town of Barnstable (In re Cumberland Farms)*, 175 B.R. 138 (Bankr. D. Mass. 1994); *In re Piper Aircraft Corp.*, 171 B.R. 415, 418 (Bankr. S.D. Fla. 1994); *In re A.H. Robins Co.*, 126 B.R. 227, 228 & n.1 (Bankr. E.D. Va. 1991) (statute of limitations); *Tapp*, 16 B.R. at 320 (default judgment).

We are presented with no reason why § 505(a)(1) should not apply equally in the context of the federal tax laws. The statute makes no distinction between state and federal law; rather, it refers to "any tax," which "encompasses both federal and state tax liabilities, including . . . federal income taxes . . . ." *New Haven Projects*, 225 F.3d at 286 n.2. Nor has this court made any federal-state distinctions in applying contest-and-adjudication clauses in subsections (a)(1) and (a)(2)(A). *See, e.g.*, *Mantz*, 343 F.3d at 1211-12 (state); *Baker*, 74 F.3d at 909 (federal).

We are unpersuaded by the Government's argument that the state law cases are distinguishable as instances of federal preemption under the Supremacy Clause. In fact, § 505 overrides state law as an exception to the Full Faith and Credit Act, 28 U.S.C. § 1738, the federal equivalent of the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, which applies only

to the States. *See Mantz*, 343 F.3d at 1214; *Tapp*, 16 B.R. at 320-21.

**[15]** Section 505 does include a provision that implicitly respects the limitations period of the applicable state or federal tax laws by precluding the exercise of bankruptcy jurisdiction if the debtor has failed to pursue its administrative remedies. But that provision is in subsection (a)(2)(B), not (a)(1), and it applies only to refund actions, not to objections to tax claims asserted by the government. *See* 11 U.S.C. § 505(a)(2)(B). Once again, this is consistent with TEFRA. The only TEFRA provision cited by the Government that expressly provides that an FPAA is entitled to preclusive effect, is also applicable only to refund actions. *See* I.R.C. § 6230(c)(4). In other words, both statutory schemes give greater preclusive effect to tax assessments in refund actions by the taxpayer than in deficiency actions by the government. *See Cumberland Farms*, 175 B.R. at 142 (noting the policy of giving greater preclusive effect to taxes paid, which are quickly spent, in contrast to taxes yet to be collected).

It therefore makes no difference that the statutory limitations period applicable to petitions for readjustment under TEFRA expired before Central Valley filed for bankruptcy protection. Because § 505 of the Bankruptcy Code generally authorizes bankruptcy courts to redetermine a debtor's tax liability notwithstanding otherwise applicable statutes of limitations, Central Valley must have actually pursued its TEFRA remedies in Tax Court for preclusion to apply. *See* 11 U.S.C. § 505(a)(1), (a)(2)(A).

## VI

**[16]** Because § 505(a)(1) of the Bankruptcy Code provides for bankruptcy jurisdiction over a debtor's partnership items and neither § 505(a)(2)(A) nor TEFRA preclude the exercise of that jurisdiction in this case, the district court erred in concluding that it was required to dismiss Central Valley's objec-

tion to the Government's tax claim for lack of subject matter jurisdiction. We therefore reverse and remand for further proceedings consistent with this decision.

**REVERSED and REMANDED.**